(A.R.D. 147)

UNITED STATES *v.* BERBEN CORPORATION

Entry No. 11564.

Third Division, Appellate Term

(Decided July 2, 1962)

*Joseph D. Guilfoyle*, Acting Assistant Attorney General (*Daniel I. Auster*, trial attorney), for the appellant.

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the appellee.

RICHARDSON, Judge: This is an application to review the decision and judgment of Judge Charles D. Lawrence, sitting in reappraisement, holding that cost of production is the proper basis of valuation of automatic pistols, imported by appellee from Italy (45 Cust. Ct. 482, Reap. Dec. 9785).

On October 26, 1953, certain importations of automatic pistols were entered at the port of New York by appellee from Italy. In 1956, this merchandise was appraised by the appraiser on the basis of foreign value, pursuant to subsection (c) of section 402 of the Tariff Act of 1930 (19 U.S.C.A., § 1402(c)), as amended by the Customs Administrative Act of 1938. Appellee appealed for a reappraisement of the merchandise by a judge of the United States Customs Court, contending the proper basis for appraisement to be cost of production under subsection (f) of section 402, *supra*, for the reason that the foreign, export, and United States markets for merchandise, such as or similar to that imported, were restricted or nonexistent at the time the involved goods were exported.

The involved subsections of section 402, *supra*, read as follows:

(c) FOREIGN VALUE.—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

\*         \*         \*         \*         \*         \*         \*

(f) COST OF PRODUCTION.—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States, and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration,

by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

The record in the case consists of the oral testimony of three witnesses, two affidavits, and a certificate of a trademark registration on behalf of the appellee; the official papers, and four reports, of the American consul general of Milan, Italy, a Treasury representative, and a customs representative, offered and received in evidence on behalf of the appellant. The only items of merchandise in dispute are pistols designated on the invoice as 418 AM and 948 LR, also known as items 418 and 948, respectively.

From our examination of the record, it appears that the firm of Pietro Beretta of Brescia, Italy, is the manufacturer and seller of the pistols in dispute and has been engaged in the manufacture of firearms since 1949. It further appears that the ownership of the stock of the plaintiff corporation is evenly distributed between a principal of the Beretta organization in Italy and a principal of the New York firm of J. L. Galef & Son, Inc. Plaintiff's business association with the manufacturer began in 1952 when, at that time, the plaintiff entered into an agreement with the manufacturer, whereunder plaintiff became the sole importer-distributor of Beretta-made firearms in the United States, acquiring the merchandise by outright purchase. The involved importations were made pursuant to this agreement. And with but three exceptions, not here material, plaintiff, in turn, sold these imported Beretta firearms to the Galef firm, plaintiff's sole outlet, and for whose account plaintiff imported the firearms against prior orders. The Galef firm, in turn, sold these pistols throughout the United States through two territorial sales managers to selected jobbers and to a few selected dealers and mail-order houses at suggested retail prices, which, up to the time in question, had been adhered to. No record of the sales made in the United States of such merchandise has been put upon the record, however. Another factor to be noted is that sales were limited to holders of Federal firearms licenses or permits. By "selected dealers," the Galef firm meant good prestige houses of a high type that it felt would be compatible with merchandising of the Beretta pistol line which it held in high esteem.

The nature and extent of Beretta's sales practices in Italy, with respect to merchandise such as that which is here involved at and prior to the exportation of the involved merchandise, are contained in the affidavit of Pier Carlo Beretta, its managing director, dated December 4, 1957, which was received in evidence as plaintiff's collective exhibit 1. The affidavit states in part:

My Company does not sell its pistols indiscriminately to any buyer on the domestic market but only to some wholesale merchants and retail merchants (dealers).

After listing the wholesale merchants in Italy to whom Beretta sold pistols in the years 1952 through 1954, the affidavit continues:

The above mentioned selected wholesale merchants have the authority (power) to effect sales in their District or Territory. In all the territories not included in the zones or districts mentioned above, we sell our pistols to retail merchants (dealers) and not to wholesalers. In their turn the retail merchants or dealers sell only to the actual users or consumers of the article.

Our selling prices depend on the class or category to which the buyer belongs.

My Company does not sell pistols for use and consumption on the Italian domestic market to any person that does not have the permit or license, in accordance with Italian law, to buy firearms.

The substance of the above-excerpted statements of Beretta's managing director was substantially reiterated in the affidavit of the president of the Beretta firm, Giuseppe Pier Beretta, in an affidavit that was submitted by the Government as part of its collective exhibit E. The affidavit is dated March 10, 1959, and states in part:

To the best of my knowledge, after studying the files of my firm relating to the period June 23 to December 23, 1953, I state the facts as [set] forth below:

My firm does not sell its pistols, or any other kind of firearm, freely to all purchasers in home market, but only to certain wholesalers and retailers licensed under Italian laws to buy and sell firearms.

It was established in the record that Italian law restricts the sale, ownership, use, and possession of firearms to persons holding licenses. It also appears from the record that the Beretta pistols are patented and are unique in style, design, workmanship, and in some functional uses from other pistols of Italian manufacture.

Concerning the record of sales made of the items in question in the home market in Italy (defendant's collective exhibit E) for the period between June 23 to December 23, 1953, it appears that sales were distributed between wholesalers, retailers, and consumers, with the bulk of the sales being made to retailers more or less at list prices of lire 6,000 for the model 418 pistol and lire 8,300 for the model 948 LR pistol, irrespective of the quantity sold. These were the respective unit values returned by the appraiser for the items in question, to which was added the 3 per centum sales tax and cost of packing. The appraisement was predicated upon the foreign value of the involved merchandise, inasmuch as the record as then constituted indicated that export sales of such merchandise were made on a restricted basis and that no restrictions attached to sales made in the home market in Italy, according to reports of the American

consul general in Milan, Italy, dated October 2, 1952, and June 23, 1953, respectively (defendant's collective exhibits A and B).

The single judge gave credence to the statements contained in the affidavits of Beretta's managing director and president pertaining to its method of customer selection in the sale of merchandise such as that imported herein, over and above the reports of the American consul general in Milan, Italy. This, coupled with uncontroverted evidence of restrictions in the export market and the continuation of customer selection in merchandising practices which were followed in the sale of the merchandise in the United States, led to a finding by the trial judge negativing the existence of a foreign, export, or United States value for the involved merchandise, and a holding that cost of production was the proper basis of valuation of such merchandise.

Among other things, appellant maintains that there is a foreign value for the involved merchandise. Appellant argues that the fact that the exporter did not sell these pistols indiscriminately to any buyer, but only to some licensed wholesale and retail merchants, does not mean that the exporter did not freely offer the merchandise to all who cared to buy and who were good credit risks. This, appellant continues, did not operate to create a controlled or restricted market.

As we view the record before us, we think that the single judge was primarily faced with making a choice between two conflicting statements of fact regarding the conditions attending the sale of the merchandise both in the home market and in the United States. We think the trial judge's finding that the merchandise was sold in these markets under restrictions is supported by the evidence. The selection of particular customers to whom the merchandise is to be sold constitutes a restriction which precludes the existence of a free market for such merchandise. *United States* v. *Malhame & Co.*, 24 C.C.P.A. (Customs) 448, T.D. 48911. The trial judge was entitled to credit the statement contained in the affidavit of Beretta's managing director with respect to customer selection, as being *prima facie* evidence of such fact. *Charles Happel, Inc.* v. *United States*, 28 Cust. Ct. 612, Reap. Dec. 8111. Particularly so, in view of the fact that such statement was corroborated by evidence proffered by the Government to the same effect, and which, by reason thereof, became binding upon the Government.

In fact, our attention has been called to no case where weapons or firearms in the category of pistols have been imported and appraised on the basis of a foreign, export, or United States value. And the only cases which we have been able to find dealing with the valuation of importations of firearms are cases such as *Stoeger Arms Corp.* v.

*United States*, 38 Cust. Ct. 662, Reap. Dec. 8812, affirmed 40 Cust. Ct. 887, A.R.D. 86, affirmed 46 C.C.P.A. (Customs) 59, C.A.D. 696. The merchandise involved in that case consisted of rifles imported from Germany, as to which the parties conceded that United States value was the proper basis of valuation for such merchandise. Such a concession necessarily implied that the merchandise was *freely offered* for sale in the United States to all purchasers—free of all restrictions such as those here involved.

In view of all of the circumstances disclosed in the record, we are of the opinion that the plaintiff met its burden of proof with evidence establishing not only that foreign value for the involved merchandise was nonexistent, but that cost of production was the proper basis of valuation of such merchandise.

The appellant further claims that, even assuming that cost of production is the proper basis for the appraisement of the involved merchandise, the evidence offered by plaintiff fell short of establishing cost of production of the disputed items. In particular, appellant argues that the affidavit of Beretta's managing director fails to establish that the figures constituting the elements of cost of production of these items were derived from Beretta's books of account. The critical portion of the affidavit of Pier Carlo Beretta (plaintiff's collective exhibit 1) states:

> On basis of an examination of the books and documents of my Company, kept under my own control and management, I am fully familiar with the precise manufacturing cost of the various pistols exported by my Company to the Berben Corporation and to J. L. Galef & Son, Inc. in the years 1952, 1953 and 1954, identified on the invoices by the number indicated below.

This statement is followed by an enumeration of the various cost factors and figures pertaining to the manufacture and handling of the pistols and concerning which there generally appears to be no dispute.

We think it is reasonable to infer from the language of the affidavit referred to above that the affiant was addressing himself to Beretta's books of account as the source of the cost of production data recited in the affidavit, although not expressly stated in so many words. Especially so, in view of the juxtaposition of this excerpted statement to such data and the fact that this subject is set apart from all other subjects dealt with in the affidavit as to which books of account have no reference. We are not here faced with a state of facts wherein evidence of cost of production is derivative from sources other than books of account, as was the case in *Philipp Wirth et al.* v. *United States*, 24 C.C.P.A. (Customs) 188, T.D. 48654, and *Gerhard & Hey Co., Inc. (Philipp Wirth)* v. *United States*, 27 Cust. Ct. 479, Reap.

Dec. 8063, affirmed 30 Cust. Ct. 580, A.R.D. 13, which are relied upon by appellant and which are distinguishable as such from the facts in the case at bar. A contrary inference from the language of the affidavit, when read as a whole, would represent, in our opinion, the indulgence of semantics for the exaltation of form above substance.

Of greater merit, we think, is appellant's contention with respect to the proof offered by appellee of the "profit which ordinarily is added by other manufacturers of the same class or kind of merchandise" as that involved herein. Plaintiff's proof, in this connection, is predicated upon the affidavit of Beretta's managing director (plaintiff's collective exhibit 1), the pertinent parts of which, after indicating the profit for the disputed items, to wit, models 418 and 948, to be lire 675 and 960, respectively, for the years 1952, 1953, and 1954, reads as follows:

The above profits represented the amounts obtained by my Company in the sale of the merchandise for the general characteristics of the merchandise exported to the United States, which represented 30% or more of the total commercial sales of my Company, the volume of which was larger than that of the sales made in any other market.

Since my Company cannot have any access to the books and documents of the other manufacturers and producers in Italy in the line or field of manufacture and production of the same class and kind of merchandise exported by us to the United States of America, I cannot specify the present (standard) profits which the other manufacturers and producers add to their own cost of production. However, on basis of my knowledge of the cost of the materials, of workmanship (labor), of the expenses of administration (overhead), of packing and of the other usual charges and expenses that go in the production of the same class and kind of merchandise, namely of the pistols manufactured by my Company, and on basis furthermore of my own knowledge of the selling prices of the other manufacturers and producers, I am able to state that their profit in the years 1952, 1953 and 1954 in the production and manufacture of the same class and kind of merchandise as that exported by my Company to the United States of America, was not greater than the profit which, as usual, my Company added in the case of the pistols having the same general characteristics as those which my Company exported to the United States of America.

Concerning this statement, appellant argues, in substance, that it lacks evidentiary value, is conjectural, ventures no identification of appellee's foreign competitors in the field, nor evinces any sincere effort on appellee's part to ascertain the existence of the information presumed to be in such competitors' possession regarding their profits, and does not establish the nonexistence of such information. In this respect, we think appellant's arguments are well founded. The legislative purpose underlying the enactment of paragraph (4) of section 402(f), *supra*, appears to have been the establishment of a safeguard against the undervaluation of imported merchandise for duty purposes. This is evident from the statutory scheme of comparison of

the profit margin added to the merchandise in question in the country of origin against the merchandising practices in this respect of competitor manufacturers in the same country as to such or similar merchandise, or merchandise of the same general character.

We are not here concerned with the ascertainment of the profit ordinarily added by other manufacturers of pistols *such as* or *similar to* the pistols in question. We are concerned only with pistols of the *same general character*. A distinction should be drawn between these two categories of merchandise. *Cf. United States* v. *T. E. Ash*, 23 C.C.P.A. (Customs) 360, 365, T.D. 48211; *Empire Distributors* v. *United States*, 30 Cust. Ct. 487, 495, Reap. Dec. 8194, affirmed *United States* v. *Empire Distributors*, 33 Cust. Ct. 568, A.R.D. 47. The evidence presented by the appellee at the trial has, in our opinion, eliminated the former category from the scope of our inquiry. But the language of the above-excerpted affidavit has brought into focus the latter category. And insofar as evidence of the profit margin of merchandise in such category is concerned, we think this affidavit is palpably deficient in precisely the particulars contended for by appellant.

While appellee correctly adverts to the law in this affidavit with respect to the addition of profit under the cost of production theory, in our opinion, the affidavit furnished the trial court with no basis for crediting its recitals concerning the absence or nonproduction of records or other data of other Italian manufacturers of pistols of the same general character as to profit. And notwithstanding our inquiries on the oral argument of the instant application to ascertain from appellee creditable reasons for the nonproduction of such records and data, much was left to be desired in answer thereto before we could be in a position to give credence to such recitals.

We are, of course, mindful of the fact that the language of the statute oftentimes places a seemingly insuperable burden upon the importer to marshal evidence from sources whose very existence or whereabouts are unknown to him and, indeed, often unavailable to him. To bridge this abyss, the courts have on occasion permitted evidence of profits added by the manufacturer to the merchandise in question, coupled with proof of unrewarded diligence on the part of the importer to ascertain the profit added by competing manufacturers to merchandise such as or similar to the imported merchandise, or of the same general character as such merchandise, if such be in existence, to suffice in discharging the requirements of the statute. See *United States* v. *Arrow Upholstery Co., Inc.*, 24 Cust. Ct. 539, Reap. Dec. 7793; *United States* v. *Jovita Perez*, 36 C.C.P.A. (Customs) 114, C.A.D. 407; *Raylite Trading Co.* v. *United*

*States*, 38 Cust. Ct. 753, A.R.D. 76. In such manner, the court gains the necessary reassurance that the profit added to the particular merchandise in question is not conveniently below that of the market for such goods in circumvention of our tariff regulations pertaining to dutiable value. In our opinion, no such case was presented to the trial court on the instant record to warrant the application of the principle laid down in the cited cases, where, as here, the record is barren of any evidence of *diligent effort* on appellee's part to ascertain the existence or nonexistence, as the case may be, of records and other data of other Italian pistol manufacturers pertaining to the profit usually added by them to the manufacture of pistols of the same general character as those here involved, and to produce such records and data as may be found to be in existence and to be available. Consequently, the trial court should have restored the case to the appropriate trial docket so that the missing elements of proof in such respects could have been supplied. *Cf. Empire Distributors* v. *United States*, 24 Cust. Ct. 609, 613, Reap. Dec. 7827.

Were we to adopt a contrary view we would be establishing a precedent which might well result in the abrogation of the safeguards written into paragraph (4) of section 402(f), *supra*, rather than in their observance. Therefore, we reverse the judgment of the trial court and remand the case to a single judge of the Customs Court, sitting in reappraisement, for further proceedings pursuant to paragraph (4) of section 402(f) of the Tariff Act of 1930 (19 U.S.C.A., section 1402(f)(4)), in accordance with the views herein expressed.

Judgment will be entered herein accordingly.