(Reap. Dec. 10339)

REX CUTLERY CORP. *v.* UNITED STATES

Entry No. 21891, etc.

(Decided September 26, 1962)

*Siegel, Mandell & Davidson* (*Sidney Mandell* and *Joshua M. Davidson* of counsel) for the plaintiff.

*Joseph D. Guilfoyle,* Acting Assistant Attorney General (*Daniel I. Auster,* trial attorney), for the defendant.

LAWRENCE, Judge: Fifteen appeals for a reappraisement, enumerated in the schedule annexed to and made a part hereof, challenge the appraisement of importations of manicuring implements, consisting of nail clippers or nippers, cuticle nippers, and scissors.

The merchandise was exported between January 28, 1954, and June 26, 1955, by Leopold Lippe & Co., Inc., of Paris (Lippe).

The merchandise was appraised on the statutory basis of foreign value of similar merchandise, as defined in section 402(c) of the Tariff Act of 1930 (19 U.S.C. § 1402(c)), as amended by the Customs Administrative Act of 1938, at unit values shown on the invoices, less 15.35 or 16.85 per centum, packed.

Plaintiff contends that there was no foreign, export, or United States value for such or similar merchandise and that cost of production, as defined in section 402(f) of said act (19 U.S.C. § 1402(f)), is the proper statutory basis for appraisement.

The invoices and entry papers which were received in evidence, without being marked, show that Lippe was either "seller or consignor," "seller or shipper," or "agent of seller."

Attached to the entry papers are commercial invoices which were made out either on the letterhead of Lippe or of Louis Minel (Minel) of Nogent-en-Bassigny, addressed to Societe Leopold Lippe & Co., Paris, and "Pour le compte: Rex Cutlery, 11 East 36th Street, New York (U.S.A.)."

Each of the consular invoices contains the following questions and answers of Lippe:

Is such or similar merchandise offered or sold in the home market for home consumption? <u>Yes.</u> If so, what taxes are applicable? 1.01% and 15.35%
  (Yes or No)
[or 16.85].

On the commercial invoice attached to reappraisement 271962–A, there appears the following statement certified by Lippe—

\* \* \* that merchandise the same as or similar to that described in this invoice is freely offered for sale in France and is ordinarily sold for home consumption to purchasers classified for the purposes of the French fiscal reform law as "producers" that such sales are made at prices 31.40% higher than the invoice price, plus an amount for tax equal to 23.83% of such price \* \* \*.

In the remaining appeals for reappraisement, a similar statement appears on the letterhead of Lippe attached to the invoices, with the exception of reappraisements 271963–A and 271966–A.

At the trial, plaintiff introduced an affidavit of Jean Marqueze, president of Minel, which was received in evidence as plaintiff's exhibit 1. This affidavit will be referred to more in detail, *infra.*

Plaintiff introduced its sole witness, Edwin R. Burger, at present engaged in the real estate business but formerly, for about 25 years, including the period of these importations, treasurer of the plaintiff company, supervising production, sales, and finance, and familiar with the subject importations. He had been in France in 1953 where he had investigated the cutlery business. He stated that the kind of goods offered for sale at that time were made primarily of carbon steel, nickel-plated, and that the merchandise which his firm imported—

\* \* \* differed in styling, shapes and styling, a different type of locking device, and we had a smooth surface rather than serrations. And with the addition of stainless steel, we replaced carbon steel.

In the United States, it manufactured manicuring implements, both chrome and stainless steel; that manufacturers in France did not.

Burger further testified that the subject importations were produced on order from samples made in "our own factory here" and sent over to France; that his company had an arrangement with Minel for the exclusive sale of this merchandise in the United States.

It also appears from the record that the goods imported by Rex bore the trademark "Joy of Paris, Rex Cutlery, U.S.A."

Briefly stated, plaintiff contends that Burger's testimony establishes the following differences between the subject cutlery and that sold in France for home consumption; namely:

1. The imported cutlery was made from stainless steel or chrome-plated steel, while that for sale in France was made of carbon steel.

2. There are differences in character, styling, and in the type of locking device.

3. That the merchandise bore a trademark which would not be placed upon goods sold in the French market.

Further in support of plaintiff's claim that neither such nor similar merchandise to that involved in these importations was the subject of sale for home consumption in France, plaintiff relies upon the affidavit

of Jean Marqueze (exhibit 1) who states, in substance, that he is president of the firm of Minel, with which he had been associated for 18 years, and which company was the manufacturer of the merchandise in controversy; that his duties are sales of merchandise in France as well as "to other countries in the Western Hemisphere"; is acquainted with the production of all items manufactured by Minel and supervises the sales records relating to cost of manufacture and production.

Marqueze further stated that he was well acquainted with the Rex Cutlery Corp. and the cutlery sold to that firm between February 1954 and July 1955; that said sales were made either directly to Rex or through the firm of Lippe, "acting as sales agent"; that the articles of cutlery here under consideration, during the period of February 1954 and July 1955, were not sold for domestic consumption in France but were manufactured for and sold directly to the Rex Cutlery Corp., stating that the articles were—

* * * designed especially for said firm and differed from the articles sold for domestic consumption in that the articles designed and manufactured for and sold to Rex Cutlery Corp. had smooth edges and nonlocking devices as compared to serrated edges and locking devices for the articles sold domestically, thus resulting in different articles with different costs of production, prices and sales appeals.

Said affidavit was signed by Marqueze and legalized on the 9th day of May 1961.

In rebuttal of the testimony of Burger and the affidavit of Marqueze that similar cutlery to that involved in these importations was not sold for home consumption in France, the Government points to the statement contained on each of the consular invoices wherein Lippe, either as seller, consignor, shipper, or agent of the seller, answered "Yes" on each invoice to the question "Is such or similar merchandise offered or sold in the home market for home consumption?" It is significant that these invoices were prepared during the period between February 1954 and July 1955 and were certified by Lippe before a vice consul of the United States.

The court is, therefore, confronted with irreconcilable and contradictory statements between Burger and Marqueze on the one hand, and Lippe on the other. Lippe, of course, by reason of his intimate association with Minel, the manufacturer in Paris, was in a position to know at firsthand about such or similar merchandise being offered or sold in the home market for home consumption when he answered "Yes" to that question.

In certifying to the truth and correctness of the statements on the invoices, Lippe is charged with knowledge of sections 481 and 482 of the Tariff Act of 1930, which state the nature of the information

which is required to be placed on invoices of merchandise shipped to this country (sec. 481) and that said invoices shall be certified by a consular officer of the United States (sec. 482). Such information is obviously designed to assist the office of the United States appraiser in evaluating the merchandise for duty purposes.

Bearing in mind that the statements of Lippe were made in the routine course of business upon the consular invoices, in which he certified "* * * that all the statements contained herein and in such invoice are true and correct," while the affidavit of Marqueze was executed 6 or 7 years later with presumed knowledge that the matter was in litigation, the court is inclined to give greater credence to the evidentiary value of the invoice statements, to which reference has been made, than to the affidavit of Marqueze.

Mere differences in styling, shaping, and construction, and even though the imported cutlery may have had a distinctive trademark, are distinctions which would not necessarily destroy the quality of legal similarity.

In view of the conclusion the court has reached in this case, it becomes unnecessary to review the record with respect to the presence or absence of export or United States value or cost of production of the merchandise.

It is the opinion of the court, in the instant case, that the presumed correctness of the appraiser's finding of value has not been overcome by competent evidence.

The court finds as facts:

1. The manicuring implements in controversy consist of nail clippers or nippers, cuticle nippers, and scissors, bearing the trademark "Joy of Paris, Rex Cutlery, U.S.A.," exported from France.

2. That similar merchandise, on or about the date of exportation, was freely offered for sale for home consumption to all purchasers in the principal markets of France, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment, to the United States.

3. That there is no competent evidence to establish a value other than that found by the appraiser.

The court concludes as matters of law that:

1. The proper basis of value for the merchandise herein involved was the foreign value of similar merchandise, as that value is defined in section 402(c) of the Tariff Act of 1930, as amended, supra, and that there was no higher export value for such or similar merchandise.

2. That said foreign value is the value found by the appraiser.

Judgment will issue accordingly.