(Reap. Dec. 10819)

REX CUTLERY CORP. *v.* UNITED STATES

Entry No. 21891, etc.

(Decided on rehearing [Reap. Dec. 10339] September 2, 1964)

*Siegel, Mandell & Davidson* (*Sidney Mandell, Allan H. Kamnitz,* and *Joshua M. Davidson* of counsel) for the plaintiff.

*John W. Douglas,* Assistant Attorney General (*Daniel I. Auster* and *Charles P. Deem,* trial attorneys), for the defendant.

LAWRENCE, Judge: The 15 appeals for a reappraisement enumerated in the annexed schedule and made a part hereof were consolidated for trial. They challenge the appraisement of importations of manicuring implements, consisting of nail clippers or nippers, cuticle nippers, and scissors, which were appraised on the statutory basis of foreign value of similar merchandise, as defined in section 402(c) of the Tariff Act of 1930 (19 U.S.C. § 1402(c)), as amended by the Customs Administrative Act of 1938, at unit values shown on the invoices, less 15.35 or 16.85 per centum, packed.

Plaintiff contends that there was neither foreign, export, nor United States value for such or similar merchandise and that cost of production, as defined in section 402(f) of said act (19 U.S.C. § 1402(f)), is the proper statutory basis for appraisement.

The case was originally decided by this court in *Rex Cutlery Corp. v. United States,* 49 Cust. Ct. 397, Reap. Dec. 10339. The court there held that the evidence introduced by plaintiff failed to overcome the presumption of correctness attaching to the action of the appraiser in his finding of foreign value for the articles in controversy, predicated on the value of similar merchandise sold for home consumption in the country of exportation. Accordingly, the court found it unnecessary to review the record with respect to the presence or absence of export or United States value or cost of production of the merchandise.

The case is again before the court as the result of an order granting a motion for rehearing. *Rex Cutlery Corp. v. United States,* 49 Cust. Ct. 476, Reap. Dec. 10390.

At this trial, plaintiff offered an affidavit executed by Leopold Lippe, president of the firm of Leopold Lippe & Cie, Inc., Paris, France, which was received in evidence as plaintiff's exhibit 3, and the case was submitted for decision.

At the original trial, plaintiff introduced an affidavit of Jean Marqueze, president of the firm of Louis Minel, Nogent-en-Bassigny, France, manufacturers of the merchandise in controversy, which was

received in evidence as plaintiff's exhibit 1, and will be referred to more in detail, *infra.*

Plaintiff then called as its witness Edwin R. Burger who at the time was engaged in the real estate business but formerly, for about 25 years, including the period of these importations, was treasurer of the plaintiff company, supervising production, sales, and finance, and familiar with the subject importations. He had been in France in 1953 at least a year prior to the exportation of the merchandise herein; had investigated the cutlery business and stated that the kind of goods offered for sale at that time was made primarily of carbon steel, nickel-plated, and that the merchandise which his firm imported—

\* \* \* differed in styling, shapes and styling, a different type of locking device, and we had a smooth surface rather than serrations. And with the addition of stainless steel, we replaced carbon steel.

In the United States, it manufactured manicuring implements, both chrome and stainless steel; manufacturers in France did not.

Burger further testified that the subject importations were produced on order from samples made in "our own factory here" and sent over to France; that his company had an arrangement with Minel for the exclusive sale of this merchandise in the United States.

It also appears from the record that the goods imported by Rex bore the trademark "Joy of Paris, Rex Cutlery, U.S.A."

Briefly stated, plaintiff contends that Burger's testimony establishes the following differences between the subject cutlery and that sold in France for home consumption, namely:

1. The imported cutlery was made from stainless steel or chrome-plated steel, while that for sale in France was made of carbon steel.

2. There are differences in character, styling, and in the type of locking device.

3. That the merchandise bore the trademark above indicated which would not be placed upon goods sold in the French market.

In his affidavit, plaintiff's exhibit 1, Jean Marqueze, president of the firm of Minel, stated that he had been associated with the firm 18 years; that he was acquainted with the production of all items manufactured by Minel and supervised the sales records relating to their cost of manufacture and production; that the articles of cutlery here under consideration were not sold for domestic consumption in France but were manufactured for and sold only to the Rex Cutlery Corp.

Marqueze corroborated the testimony of Burger on the points of dissimilarity between the items sold to the Rex Cutlery Corp. and those sold for home consumption in France, stating that the articles were—

* * * designed especially for said firm and differed from the articles sold for domestic consumption in that the articles designed and manufactured for and sold to Rex Cutlery Corp. had smooth edges and nonlocking devices as compared to serrated edges and locking devices for the articles sold domestically, thus resulting in different articles with different costs of production, prices and sales appeals.

In the affidavit of Leopold Lippe (plaintiff's exhibit 3), it appears that he is president of the firm of Leopold Lippe & Cie, Inc., of Paris, France, and had been associated with the firm for 25 years; that among other things his duties include selling cuticle and nail nippers, tweezers and other manicure implements and articles manufactured by Louis Minel, not only in France but to countries in the Western Hemisphere; that he was familiar with the nail and cuticle nippers, manicure scissors, and shears manufactured by Minel, which he identified by distinctive names and numbers.

Based upon records of his company, Lippe stated that, during the period of exportation from January 1954 to June 1955, the items in controversy were not sold for domestic consumption in France; that they were manufactured for and sold only to the Rex Cutlery Corp., having been especially designed for that firm, bearing the trademark "Joy of Paris, Rex Cutlery Corporation, U.S.A." Further, he stated that the merchandise sold to the Rex Cutlery Corp. was made of stainless steel or steel plated with chrome and that it had smooth edges and nonlocking devices whereas the articles sold domestically in France were made from nickel-plated steel having serrated edges and locking devices.

A careful review of the record as presented satisfies the court that the items of cutlery in controversy are not similar to any merchandise sold for home consumption in France at the time of the production of the subject merchandise.

In *C. J. Tower & Sons* v. *United States*, 50 CCPA 76, C.A.D. 824, our appellate court reviewed several cases in which the question of similarity of merchandise was involved and with special reference to *United States* v. *The Heyman Co., Inc.*, 48 CCPA 13, C.A.D. 755, wherein certain istle fiber pads were found to be "similar" to imported henequen fiber pads notwithstanding a "price differential" and lack of identity, stated—

* * * That case clearly indicates that the overriding consideration in determining similarity, be it merely similarity of materials or overall similarity of merchandise for appraisement purposes, is *commercial interchangeability* rather than considerations of ultimate use or cost of production. * * * [Italics quoted.]

By analogical reasoning, a lack of commercial interchangeability would indicate absence of similarity.

Since the record shows that the merchandise in controversy was manufactured according to exclusive designs copied from samples of items manufactured and marketed in the United States by the plaintiff, the differences in material, construction, character, design, styling, and trademark establish a lack of commercial interchangeability between the subject merchandise and that sold for home consumption in France. These are important considerations in determining lack of similarity.

Obviously, there was no foreign or export value for the subject merchandise for the simple reason that neither such nor similar merchandise was freely offered for sale to all purchasers either for home consumption or for export to the United States, it clearly appearing from the record that the items in dispute were manufactured for and sold only to the Rex Cutlery Corp. Consequently, there were no "freely offered" prices for the commodity as required by section 402 (c) and (d) of the Tariff Act of 1930.

As to the existence or nonexistence of United States value, it appears from the record that the merchandise was marketed in the United States by arrangement with exclusive buyers in limited geographical areas. Furthermore, the articles were subject to resale at a predetermined retail price. These factors establish a restricted market and defeat the "freely offered for sale" requirement of statutory United States value in section 402 (e), as amended, *supra*.

There remains for consideration the question whether statutory cost of production has been established as the proper basis for appraisement of these importations.

Section 402 (f), *supra*, provides in substance that statutory cost of production shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;
to those costs must be added—

(2) The usual general expenses * * * in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, picked ready for shipment to the United States; and

(4) An addition for profit * * * equal to the profit which ordinarily is added, in the case of merchandise of the same general char-

acter as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

On this phase of the case, plaintiff relies upon the affidavit of Jean Marqueze. As previously stated, he had been associated with Minel for 18 years and was in charge of and intimately acquainted with the production of all items manufactured by Minel, having access to the sales records, records of cost of manufacture and production, and records pertaining to general expenses and all other expenses incurred in the manufacture and sale of the products of Minel.

Based upon his knowledge of the records of Minel and with all the elements in the cost of production of the merchandise in controversy, he set forth in detail in said exhibit 1 the various items representing the cost of production of the articles in dispute.

The uncontradicted statement of Marqueze, with respect to cost of production of the instant merchandise, satisfactorily establishes statutory cost of production with one exception, namely, the element of profit.

With regard to the item of profit, Marqueze states—

With reference to the element of profit noted in the preceding figures, while I do not have access to the books and records of other manufacturers in France who are engaged in the production of nail and cuticle nippers and scissors of the same general character or of the same class or kind as the nail and cuticle nippers and scissors which the firm of Louis Minel has manufactured for and exported to Rex Cutlery Corp. in the United States and which are the subject of the proceedings in which this affidavit is being offered, from my general knowledge of the cost of materials, labor, overhead, packing, general expenses and all other costs and expenses ordinarily incurred in producing nail and cuticle nippers and scissors and related manicure implements and articles in France and from my knowledge of the selling price and business practices of other manufacturers and producers, it is my firm opinion that their profit during the period from February, 1954 to July, 1955 was not more than the profit added by the firm of Louis Minel, as noted in the preceding figures, in the manufacture and sale of the involved articles.

It is observed that Marqueze, in arriving at the element of profit, states that, while he does not have access to the figures and records of his competitors, he bases his estimate of profit upon his "general knowledge" of the cost of materials, labor, and so forth, and from his knowledge of selling prices of other manufacturers, and concludes by stating that "it is my firm opinion that their profit during the period from February, 1954 to July, 1955 was not more than the profit added by the firm of Louis Minel * * * in the manufacture and sale of the involved articles."

It is notable that there is no showing of any effort by the affiant to secure information from other manufacturers in France who were engaged in the production of merchandise of the same general character or of the same class or kind.

Plaintiff relies upon decisions of our appellate court in *United States* v. *Henry Maier*, 21 CCPA 41, T.D. 46378, and *Philipp Wirth et al.* v. *United States*, 23 CCPA 283, T.D. 48144, as authorities in support of its contention that the requirements of proof of cost of production have been fulfilled.

An examination of those cases reveals differences in the factual structure therein from the facts in the present case and requires different legal conclusions.

In the *Maier* case, *supra*, the court held in discussing the element of profit that—

\* \* \* it is not enough to establish what the ordinary profit of the manufacturer of the imported merchandise was, if merchandise of the same general character was produced and sold by others in the country of exportation, and the profit made thereon is reasonably ascertainable. If not so produced and sold by others, the profit ordinarily made by the manufacturer of the imported merchandise in producing goods of the same general character as the imported merchandise may be resorted to in arriving at the statutory cost of production. \* \* \*

It is noted that in the *Maier* case, it appeared that no merchandise of the same general character as the merchandise there in controversy was sold in the country of exportation. In the case at bar, however, there is evidence that merchandise of the same general character was sold in the country of exportation.

The *Maier* case was cited and followed in *United States* v. *Jovita Perez*, 36 CCPA 114, C.A.D. 407.

It is not clear in what respects, if any, the *Wirth* decision lends support to plaintiff's argument on cost of production.

The *Wirth* case had a long history, having been reviewed by the appellate court three times. It was first reported in *United States* v. *Philipp Wirth et al.*, 20 CCPA 94, T.D. 45705. The court reviewed the record and, without any decision on the merits of the controversy, the judgment of the lower court was reversed and the case remanded for further proceedings.

In its second review of the case, 23 CCPA 283, T.D. 48144, which is relied upon by plaintiff herein, the appellate court again, in view of the record, found that the lower court failed to give proper consideration to evidence on the subject of cost of production, and the cause was again remanded with instructions to the appellate division to make findings on the cost of production.

The third appeal in that case is reported in 24 CCPA 188, T.D. 48654, in which the appellate court held that the finding of the lower

court that the evidence was insufficient to establish cost of production of the merchandise there in issue was supported by some substantial evidence. So far as the question of profit is concerned, the *Wirth* case throws no light on the subject.

The element of proof of profit in the cost of production formula has been the subject of consideration in numerous decisions by this court following the rule announced in the *Maier* case, *supra*. *United States* v. *Arrow Upholstery Co., Inc.*, 24 Cust. Ct. 539, Reap. Dec. 7793 (1950), *Raylite Trading Co., Inc., et al.* v. *United States*, 38 Cust. Ct. 753, A.R.D. 76 (1957), and *United States* v. *Berben Corporation*, 49 Cust. Ct. 497, A.R.D. 147 (1962).

In view of the authorities cited, the court is constrained to hold that the element of profit in the cost of production has not been established by the evidence.

Based upon the record, the court makes the following findings of fact:

1. The manicuring implements in controversy consist of nail clippers or nippers, cuticle nippers, and scissors, bearing the trademark "Joy of Paris, Rex Cutlery, U.S.A.," exported from France from January 1954 to June 1955.

2. That at the time of exportation neither such nor similar merchandise was freely offered for sale for home consumption in the principal markets of France.

3. That at the time of exportation neither such nor similar merchandise was freely offered for sale for export to the United States.

4. That at the time of exportation neither such nor similar merchandise was freely offered for sale in the principal markets of the United States.

5. That at the time preceding the date of exportation of such merchandise, which would ordinarily permit the manufacture or production of the particular merchandise, the element of profit specified in section 402(f) of said act, defining cost of production, was not established by the evidence.

The court concludes as matters of law:

1. That there is neither foreign, export, nor United States value for such or similar merchandise, as those values are defined in section 402 (c), (d), and (e) of the Tariff Act of 1930, or as amended, *supra*.

2. That in the absence of proof of the element of profit in cost of production, as required by section 402(f) of the Tariff Act of 1930, *supra*, the appraiser's finding of value stands as the dutiable value of said merchandise.

Judgment will issue accordingly.