(A.R.D. 199)

Rex Cutlery Corp. *v.* United States

Entry No. 21891, etc.

Third Division, Appellate Term

(Decided November 18, 1965)

*Siegel, Mandell & Davidson* (*Allan M. Kamnitz* and *Joshua M. Davidson* of counsel) for the appellant.
*John W. Douglas*, Assistant Attorney General (*Charles P. Deem*, trial attorney), for the appellee.

Before DONLON and RICHARDSON, Judges

DONLON, Judge: Plaintiff below has appealed for review of a decision in reappraisement in these 15 consolidated cases. *Rex Cutlery Corp.* v. *United States*, 53 Cust. Ct. 402, Reap. Dec. 10819. The assignment of errors includes an allegation of error in the decision affirming the appraiser's valuation, particularly in that appellant's proofs were found insufficient to establish as a component in computing cost of production, under section 402(f), Tariff Act of 1930, as amended, the addition for profit which appellant claims.

There are assignments of error, also, as to denial by the trial judge of the motion of appellant (plaintiff below) for a rehearing after his decision had been entered.

Although appraisement was said to be on the foreign value of similar merchandise, neither appellant nor appellee assigns error to the finding that cost of production is the proper basis for valuing this merchandise. Basis is not an issue in this review.

This case has had a long history. It involves merchandise entered in 1954 and 1955. It was first decided, after trial, in *Rex Cutlery Corp.* v. *United States*, 49 Cust. Ct. 397, Reap. Dec. 10339, a decision entered on September 26, 1962. In that decision, the trial judge held, on the record before him, that the foreign value of similar merchandise was the proper basis of valuation of the merchandise and that the value, as found by the appraiser, was the foreign value.

Plaintiff moved for rehearing, supporting the motion by an affidavit of counsel which reads more like an assignment of errors on appeal than a motion for rehearing. It submits "that there are sufficient reasons heretofore stated which warrant this Honorable Court in granting the motion for rehearing herein so that a complete canvas of all the factual details be presented to the Court for its consideration in the final and just determination of the issues presented herein."

Judge Lawrence, the trial judge, granted the motion for rehearing. *Rex Cutlery Corp.* v. *United States*, 49 Cust. Ct. 476, Reap. Dec. 10390.

On further trial held October 21, 1963, plaintiff offered into evidence an affidavit of one Leopold Lippe, of Paris, executed October 1, 1963. This was admitted over defendant's objection. (Exhibit 3.) Plaintiff then rested. Defendant moved that certain documents, which were marked at the previous trial as exhibits A, B, and C for identification,

be received into evidence. Judge Lawrence denied the motion. Defendant then rested.

Judge Lawrence handed down his decision on retrial on September 2, 1964. *Rex Cutlery Corp.* v. *United States*, 53 Cust. Ct. 402, Reap. Dec. 10819. The record was the same as developed at the first trial, save for the Lippe affidavit.

Plaintiff below (appellant here) then moved for a third hearing. Judge Lawrence denied that motion. *Rex Cutlery Corp.* v. *United States*, 54 Cust. Ct. 482, Reap. Dec. 10879. Appellant assigns error to the denial of its motion for a third hearing.

Judicial discretion to grant or deny a rehearing is not reviewable on appeal, save on unusual grounds which clearly do not exist here. *Standard Serving Equipment Corp.* v. *United States*, 46 Cust. Ct. 770, A.R.D. 128. Plaintiff below was treated most considerately. It was given two opportunities to present its proofs. There is no reversible error in denial of its motion, which we do not review.

The substantial question for review is appellant's assignment of error in the trial judge's finding that appellant failed to prove that the profit claimed as an addition to the cost of producing the imported merchandise (nail clippers, cuticle nippers, and scissors) was "equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind." This standard of proof is what the statute requires. 19 U.S.C., section 402(f), as in effect in 1954 and 1955.

The only evidence as to profit in the trial record is the affidavit of Jean Marqueze, president of Louis Minel, the manufacturer of the imported merchandise. (Exhibit 1.) As to the item of profit, Mr. Marqueze states, as the trial judge quoted in his decision, that:

With reference to the element of profit noted in the preceding figures, while I do not have access to the books and records of other manufacturers in France who are engaged in the production of nail and cuticle nippers and scissors of the same general character or of the same class or kind as the nail and cuticle nippers and scissors which the firm of Louis Minel has manufactured for and exported to Rex Cutlery Corp. in the United States and which are the subject of the proceedings in which this affidavit is being offered, from my general knowledge of the cost of materials, labor, overhead, packing, general expenses and all other costs and expenses ordinarily incurred in producing nail and cuticle nippers and scissors and related manicure implements and articles in France and from my knowledge of the selling price and business practices of other manufacturers and producers, it is my firm opinion that their profit during the period from February, 1954 to July, 1955 was not more than the profit added by the firm of Louis Minel, as noted in the preceding figures, in the manufacture and sale of the involved articles.

In finding that this evidence as to profit did not meet the statutory requirement of proof, the trial judge said that:

\* \* \* Marqueze, in arriving at the element of profit, states that, while he does not have access to the figures and records of his competitors, he bases his estimate of profit upon his "general knowledge" of the cost of materials, labor, and so forth, and from his knowledge of selling prices of other manufacturers, and concludes by stating that "it is my firm opinion that their profit during the period from February, 1954 to July, 1955 was not more than the profit added by the firm of Louis Minel \* \* \* in the manufacture and sale of the involved articles."

It is notable that there is no showing of any effort by the affiant to secure information from other manufacturers in France who were engaged in the production of merchandise of the same general character or of the same class or kind. [*Rex Cutlery Corp.* v. *United States,* 53 Cust. Ct. 402, Reap. Dec. 10819, at pp. 407, 408.]

In our opinion, the trial judge correctly evaluated the Marqueze affidavit. His holding is supported by the cases, including *United States* v. *Jovita Perez,* 36 CCPA 114, C.A.D. 407; *United States* v. *Berben Corporation,* 49 Cust. Ct. 497, A.R.D. 147, decided July 2, 1962.

In *Jovita Perez,* the imported merchandise was appraised on the basis of cost by production. Plaintiff-appellee conceded that cost of production was the basis, but disputed the value found by the appraiser. The proofs there showed that there were three Mexican manufacturers of merchandise of the same class or kind as the imported merchandise, that they did not maintain adequate books or records, and that the manufacturer of the imported merchandise could not, therefore, reasonably ascertain the section 402(f) profit which those manufacturers ordinarily added to their costs. On such proof, our appeals court, citing *United States* v. *Henry Maier,* 21 CCPA 41, T.D. 46378, said:

\* \* \* it seems clear that the actual profit of the manufacturer of the involved merchandise is not the sole criterion for finding the addition for profit under section 402(f)(4), *supra.* The computation of the item of profit is not limited to any particular manufacturer or manufacturers, but rather extends to all the manufacturers of the particular merchandise under consideration as well as other manufacturers of merchandise of the same class or kind—if any—and "the amount of profit should be determined according to the weight of all the evidence bearing upon the subject."

\*     \*     \*     \*     \*     \*     \*

Following the principle enunciated in the *Maier* case, *supra,* we hold that the allowance to be made for profit in determining cost of production herein is the amount ordinarily added by the manufacturer of the instant merchandise, because it is the only Mexican manufacturer that kept records from which the amount of the costs of production and the amount of the profit usually added can be ascertained. For the purpose of this case, the Mexican-American Flavors

Co., S.A., is the sole manufacturer of merchandise of the same class or kind as the particular merchandise under consideration. It naturally follows that the profit usually added is the profit actually added. [Pp. 118, 119.]

The merchandise in the *Berben* case was appraised at foreign value. Plaintiff-appellee claimed valuation on the basis of cost of production. The evidence in support of cost-of-production value was, as in this case, solely by affidavit. Affiant acknowledged that there were foreign competitors producing merchandise of the same class or kind as the imported merchandise and that the books of record of competitors were not accessible so as to ascertain their profit. Affiant failed, however, to identify the competitors, or to show that he had in good faith sought to ascertain the usual profit of the competitors, or that he was denied such information. This division, on review, reversed the trial judge and held that, absent such showing, the affidavit did not meet the statutory requirement of proof, stating:

We are, of course, mindful of the fact that the language of the statute oftentimes places a seemingly insuperable burden upon the importer to marshal evidence from sources whose very existence or whereabouts are unknown to him and, indeed, often unavailable to him. To bridge this abyss, the courts have on occasion permitted evidence of profits added by the manufacturer to the merchandise in question, coupled with proof of unrewarded diligence on the part of the importer to ascertain the profit added by competing manufacturers to merchandise such as or similar to the imported merchandise, or of the same general character as such merchandise, if such be in existence, to suffice in discharging the requirements of the statute. * * * In such manner, the court gains the necessary reassurance that the profit added to the particular merchandise in question is not conveniently below that of the market for such goods in curcumvention of our tariff regulations pertaining to dutiable value. In our opinion, no such case was presented to the trial court on the instant record to warrant the application of the principle laid down in the cited cases, where, as here, the record is barren of any evidence of *diligent effort* on appellee's part to ascertain the existence or nonexistence, as the case may be, of records and other data of other Italian pistol manufacturers pertaining to the profit usually added by them to the manufacture of pistols of the same general character as those here involved, and to produce such records and data as may be found to be in existence and to be available. [Emphasis copied; *Berben, supra,* pp. 504, 505.]

More recently the second division of this court on application for review in *Judson Sheldon International Corporation* v. *United States,* 54 Cust. Ct. 773, A.R.D. 183, decided February 24, 1965, followed the principles set forth in the *Perez* and *Berben* cases. In the *Sheldon* case, the statutory basis in issue was United States value, and the question presented was whether a case had been made for deducting, from United States value, the section 402(c) statutory allowance for "any commission usually paid or agreed to be paid, or the addition for profit and general expenses usually made, in connection with sales in such market of imported merchandise of the same class or kind as the merchandise undergoing appraisement." (*Sheldon, supra,* at

p. 774.) The second division found, as had the trial judge, the importer's evidence inadequate to establish the statutory elements of usual general expenses and of profit. In the opinion written by Chief Judge Rao, the basis of decision is stated thus:

* * * It seems plainly evident that what is comtemplated by the language of this provision is, in the first instance, a showing of the profit and general expenses which derive from sales of merchandise of the same class or kind as the imported merchandise and, secondly, that the profit and general expenses shall be those not of the particular importer, but which customarily obtain in the trade handling such merchandise.

This view comports with the construction of similar language appearing in the statutory definitions of cost of production in the Tariff Act of 1922, section 402(e), in the Tariff Act of 1930, section 402(f), and in the definition of constructed value in the Customs Simplification Act of 1956, section 402(d).

In the case of *United States* v. *Henry Maier*, 21 CCPA 41, T.D. 46378, it was held that the phrase "usual general expenses * * * in the case of such or similar merchandise" refers not to a percentage of the total turnover of all goods sold by a manufacturer, but to the usual general expenses incurred only in the production of such or similar merchandise. Obviously, this is a repudiation of any accounting legerdemain which purports to allocate to the segment of a seller's operations relating to merchandise of the kind undergoing appraisement a proportionate share of the total general expenses when such seller handles several different kinds of articles.

The writer of this opinion, in the case of *Hill Brown Corp.* v. *United States*, 53 Cust. Ct. 412, Reap. Dec. 10823, review pending,* adopted the principle expressed by the trial judge in the instant case to the effect that the term "general expenses," as used in the statutory definition of United States value, refers to overhead and other operating expenses incidental to the production and sale of goods of the character in issue, which may not be derived as a proportionate share of the total operating expenses of a company which engages in several different kinds of business activities.

* * * * * * *

The answer, we think, lies in the fact that the deductions for profit and general expenses provided for in the law are not those of the importer of the merchandise undergoing appraisement, but those which are "usually made, in connection with sales in such market of imported merchandise of the same class or kind." In this way, were safeguards erected against an unusually low invoice price, occasioned perchance by some special relationships existing between the foreign shipper and the American purchaser, or any other factor.

Similar language in related statutes has been construed as requiring a showing either that there was no other merchandise of the same general character or that diligent efforts to obtain this information from others in the trade had proved unavailing. *United States* v. *Henry Maier, supra; United States* v. *Jovita Perez*, 36 CCPA 114, C.A.D. 407; *United States* v. *A. N. Deringer, Inc.*, 46 Cust. Ct. 762, A.R.D. 127; *United States* v. *Berben Corporation*, 49 Cust. Ct. 497, A.R.D. 147.

Seemingly, what constitutes due diligence must depend upon the facts and circumstances involved in the matter in controversy and no rule of thumb will provide the answer for all situations. [Pp. 778–780.]

*Affirmed ; 55 Cust. Ct. —, A.R.D. 198.

Here, there is no showing that merchandise of the same general character was not produced in France during the period of export in January 1954 to June 1955. Indeed, appellant concedes that such merchandise was produced. The Marqueze affidavit admits it.

Since there were manufacturers and producers of merchandise of the same class or kind as the imported merchandise, during the relevant periods of exportation, and there is no showing that diligent but unrewarding effort was made to ascertain the profit usually added by such competitors to their costs, appellant's proofs are inadequate. Appellant seeks, in effect, a decision overruling the holdings of the *Jovita Perez* and *Berben* cases, as to what proofs are necessary to establish the item of profit that is to be added pursuant to section 402(f). Appellant seems to suggest that the *quantum* of proof necessary to establish cost of production is less, where appraisement was on some basis other than cost of production, than it is when appraisement is on a presumptively correct cost-of-production basis.

We see no reason to accept such an extreme interpretation of the *Perez* case, *supra*. Our appeals court there admonished that "the amount of profit should be determined according to the weight of all the evidence bearing upon the subject." (*Perez, supra*, at p. 118.) Appellant's argument that "it is a fact of business life that competitors normally do not tell each other the amount of profit they make on their sales of merchandise" (appellant's brief, p. 13) was a fact recognized and answered by this court in *Berben, supra*.

Appellant alternatively asks, if we fail to sustain it on the merits, that we remand these cases to the trial judge "for the taking of further testimony to supply the deficiency" (appellant's brief, p. 15) as to proofs on the profit usually added. Appellant asserts that the Marqueze affidavit, verified May 9, 1961, is a proof that was made prior to decision in the *Berben* case (49 Cust. Ct. 497, A.R.D. 147), which was decided July 2, 1962. However, the second trial of this case was granted December 5, 1962, which is approximately 5 months after the *Berben* case, and was held October 21, 1963, which is 15 months after *Berben*. We cannot agree that appellant lacked opportunity to prepare a record reconciled to the law as it was stated in *Berben*.

Our appeals court was similarly requested to remand, in *United States* v. *International Forwarding Co., Inc.*, 27 CCPA 21, C.A.D. 56, and said:

* * * We cannot comply with this request. In the case of *Lionel Trading Co., Inc.* v. *United States*, 21 C.C.P.A. (Customs) 362, T.D. 46889, we said, in denying a similar request:

> This is not a case where the parties proceeded upon a wrong theory, and where, in the interest of justice, we have remanded a case for a new trial, such as *United States* v. *Tide Water Oil Co.*, 19 C.C.P.A. 392, T.D. 45554, and *Chas. A. Johnson & Co.* v. *United States*, 17 C.C.P.A. (Customs) 107, T.D. 43432.

In the case at bar there is simply a question of proof of the cost of production, which was the only issue involved upon the retrial of the case, and we think that the general rule stated in *United States* v. *Malhame & Co.*, 19 C.C.P.A. (Customs) 164, T.D. 45276, should be adhered to.

In the case at bar appellee was clearly under the burden, on its own theory of the case, of establishing the absence of a foreign value of the involved merchandise.

Section 501 of said Tariff Act of 1930 provides in part:

> * * * The value found by the appraiser shall be presumed to be the value of the merchandise and the burden shall rest upon the party who challenges its correctness to prove otherwise.

So in the case at bar there is simply a question of proof negativing the existence of a foreign value of the merchandise, and that question confronted appellee at the very threshold of the trial. Under these circumstances we would not be warranted in remanding the case with directions that a new trial be ordered. [Pp. 25, 26.]

Here, the question of proof supporting appellant's claim for appraisement at cost of production confronted appellant at the trial. We would not be warranted in remanding the case for still further trial.

We affirm the findings of fact and conclusions of law of the trial judge, which we incorporate by reference.

Judgment will be entered accordingly.