(Reap. Dec. 10780)

YAMAHA INTERNATIONAL INDUSTRIES U.S.A. (ELDER) *v.* UNITED STATES

Entry No. 65081.

(Decided June 22, 1964)

*Glad & Tuttle* (*Norman C. Schwartz* and *Edward N. Glad* of counsel) for the plaintiff.

*John W. Douglas,* Assistant Attorney General (*Morris Braverman* and *Samuel D. Spector,* trial attorneys), for the defendant.

WILSON, Judge: This appeal involves the question of the correct dutiable value of certain motorcycles, manufactured in Japan. It is conceded by both parties that the proper basis for appraisal is "Constructed Value," as defined in section 402(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, T.D. 54165. The involved motorcycles are described as Model YD–2, 250 cc and Model YDS1, 250 cc, exported from Japan about May 21, 1960. The importer entered the motorcycles at invoice values of $209.45 and

$232 each, respectively, and the machines were appraised at $247.47 and $275.63 each, respectively. The involved statute reads as follows:

SEC. 402. VALUE.

    \*       \*       \*       \*       \*       \*       \*

(d) CONSTRUCTED VALUE.—For the purposes of this section, the constructed value of imported merchandise shall be the sum of—

(1) the cost of materials (exclusive of any internal tax applicable in the country of exportation directly to such materials or their disposition, but remitted or refunded upon the exportation of the article in the production of which such materials are used) and of fabrication or other processing of any kind employed in producing such or similar merchandise, at a time preceeding the date of exportation of the merchandise undergoing appraisement which would ordinarily permit the production of that particular merchandise in the ordinary course of business;

(2) an amount for general expenses and profit equal to that usually reflected in sales of merchandise of the same general class or kind as the merchandise undergoing appraisement which are made by producers in the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for shipment to the United States; and

(3) the cost of all containers and coverings of whatever nature, and all other expenses incidental to placing the merchandise undergoing appraisement in condition, packed ready for shipment to the United States.

The sole issue before the court is, what was the correct dutiable value of the involved merchandise on the date of exportation, as determined on the basis of constructed value?

All the evidence in this case is documentary. The plaintiff introduced in evidence the affidavit of one Y. Todoh, whose signature on said affidavit appears as Yoshio Toudoh (plaintiff's exhibit 1). The defendant placed in evidence three exhibits (A, B, and C), all consisting of reports by customs representatives with attached exhibits.

In an effort to establish the correct dutiable value of the involved merchandise under the constructed value provisions of section 402, as amended, *supra*, the plaintiff relies upon the affidavit of Y. Todoh, above referred to. At the time he made the affidavit, April 8, 1963, Mr. Todoh stated that he was "manager of the boat department of Yamaha Motor Company, Limited, at the main office at Hamamatsu, Japan." He further stated that that firm manufactures "light weight Yamaha motorcycles driven by a two-cycle internal combustion engine." The affiant further sets forth that he has been with the Yamaha Motor Co. since 1956, when it was first established, and began his employment in the sales department of that company at Hamamatsu, where he remained until January 1961, when he was transferred to the Hokkaido Branch of the Yamaha Motor Co. where he served as "sales chief." It would appear, therefore, according to Mr. Todoh's affidavit, that he did not become sales manager until 1961, while the sales involved in this reappraisement appeal were made in May 1960.

The affiant further states that, as sales manager, he is on the policy-making staff of the company and is one of the most experienced members in the field of sales. He further alleges that "he must be thoroughly conversant with and constantly supervise the sales practice and policies of Yamaha Motor Company, Limited," that he was familiar with the books of account of the Yamaha Motor Co. from the beginning of 1960, and that he assisted in the compilation of cost figures which are placed on the books of the company. These statements fall short, in my opinion, of establishing that the affiant supervised the entries in the books or that he made any entries in the books. It is doubtful that he effectively shows sufficient familiarity with and responsibility for the book entries to establish the authenticity of the records from which he purports to quote in giving the alleged cost of materials, labor, and profits connected with the company's operations. However, there is a further and more serious weakness in the proof relied upon by the plaintiff as based upon the affidavit. Referring again to section 402(d)(2), as amended, *supra*, it must be noted that the constructed value for appraisal purposes must show "an amount for general expenses and profit equal to that usually reflected in sales of merchandise of the same general class or kind as the merchandise undergoing appraisement which are made by producers in the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for shipment to the United States."

In the affidavit of Mr. Todoh, it is specifically set forth that, during the first 6 months of 1960, "there were other manufacturers of motorcycles that were comparable in size and production to us. Those manufacturing the two-cycle internal combustion engine motorcycles were Suzuki Motor Co., in Hamamatsu, Japan; Tohatsu Motor Co., in Tokyo, Japan, and Yamaguchi Motor Co. in Tokyo, Japan."

The affiant then further states, page 3—

That with regard to the above cost figures, we have no way of knowing what the general expenses and profit usually added by any of the other manufacturers in Japan of the two-cycle or four-cycle internal combustion engine driven motorcycles are as this is kept as a very valuable business secret. We would like very much to know what general expenses and profit our competitors have on their manufacture of two-cycle, or for that matter, four-cycle internal combustion engine driven motorcycles, just as I am sure they would like to know what our general expenses and profit margin are. We have, therefore, never turned down any opportunity which would give us this valuable business secret of our competitors but to no avail and by the same token, we have closely guarded our own general expense and profit figures from our Japanese competitors.

Such a showing, as indicated above, concerning the efforts made to determine the general expenses and profits added by other manufacturers of like merchandise in the country of exportation to the price of such goods for exportation to the United States has been held to be

insufficient to establish the statutory elements in question. Indeed, there is here shown no effort whatever to ascertain from other manufacturers any facts concerning the general expenses and profit set up as part of the sales price of their merchandise. The burden imposed upon the plaintiff of establishing the elements of "profit" and "general expenses" in the ascertainment of cost of production, or the constructed value of imported merchandise, has been indicated by certain decisions of this court, as set forth below.

The case of *A. N. Deringer, Inc., et al.* v. *United States*, 51 Cust. Ct. 475, Reap. Dec. 10634, involved the provisions of the cost of production section of the tariff act before the enactment of the Customs Simplification Act of 1956, *supra*. The court there held that there was no competent proof of the profit ordinarily added by the other manufacturers of such merchandise. In so holding, the court stated, page 487, "Evidence as to one's own 'net' annual profits is not what the law seeks." In *United States* v. *Berben Corporation*, 49 Cust. Ct. 497, A.R.D. 147, an affidavit similar to the one now before us was relied upon. As set forth in the court's opinion, the pertinent parts of the affidavit were as follows (page 503) :

The above profits represented the amounts obtained by my Company in the sale of the merchandise for the general characteristics of the merchandise exported to the United States, which represented 30% or more of the total commercial sales of my Company, the volume of which was larger than that of the sales made in any other market.

Since my Company cannot have any access to the books and documents of the other manufacturers and producers in Italy in the line or field of manufacture and production of the same class and kind of merchandise exported by us to the United States of America, I cannot specify the present (standard) profits which the other manufacturers and producers add to their own cost of production. However, on the basis of my knowledge of the cost of the materials, of workmanship (labor), of the expenses of administration (overhead), of packing and of the other usual charges and expenses that go in the production of the same class and kind of merchandise, namely of the pistols manufactured by my Company, and on [the] basis furthermore of my own knowledge of the selling prices of the other manufacturers and producers, I am able to state that their profit in the years 1952, 1953 and 1954 in the production and manufacture of the same class and kind of merchandise as that exported by my Company to the United States of America, was not greater than the profit which, as usual, my Company added in the case of the pistols having the same general characteristics as those which my Company exported to the United States of America.

The Court then comments upon the affidavit, page 503, as follows:

Concerning this statement, appellant argues, in substance, that it lacks evidentiary value, is conjectural, ventures no identification of appellee's foreign competitors in the field, nor evinces any sincere effort on appellee's part to ascertain the existence of the information presumed to be in such competitors' possession regarding their profits, and does not establish the nonexistence of such information. In this respect, we think appellant's arguments are well founded. The legislative purpose underlying the enactment of paragraph (4) of section

402(f), *supra*, appears to have been the establishment of a safeguard against the undervaluation of imported merchandise for duty purposes. This is evident from the statutory scheme of comparison of the profit margin added to the merchandise in question in the country of origin against the merchandising practices in this respect of competitor manufacturers in the same country as to such or similar merchandise, or merchandise of the same general character.

The court further holds "* * * the affidavit furnished the trial court with no basis for crediting its recitals concerning the absence or non-production of records or other data of other Italian manufacturers of pistols of the same general character as to profit."

In the case of *Judson Sheldon International Corporation* v. *United States*, 51 Cust. Ct. 374, Reap. Dec. 10586, oral testimony was offered by the importer to show that an effort had been made to secure information concerning the profit and general expenses of other importers of merchandise such as that there under consideration. As set forth in the court's opinion, the pertinent testimony was as follows:

Q. Have you been able to obtain their profit, and general expenses, for the year 1960?—A. No.

Q. Have you tried?—A. Yes.

Q. How did you try; and what did they tell you?—A. I called the individuals on the phone, and asked to speak to an executive of the company, preferably the treasurer or controller, and when I was able to reach one of the individuals I asked if they would care to divulge their general expenses and profit on these items, and naturally they told me it was none of my business.

    *         *         *         *         *         *         *

Q. Who are the importers of mica film and condensers?—A. There is United Minerals in New York; Asheville-Schoonmaker, also in New York; Cavalier—

JUDGE MOLLISON: Located where?

THE WITNESS: In North Carolina; in Durham, North Carolina.

Q. Are there any other?—A. There are a few others, but I was not able to contact them.

Q. Do you know their names?—A. Ford Mica Company, of New York. That's the only ones to my knowledge.

Q. When you say you were not able to contact them, what do you mean?—

    *         *         *         *         *         *         *

A. I was unable to locate the company in the New York area, which I was under the impression that was where they were located. [R. 36–37.]

In the *Judson Sheldon* case, *supra*, there was further testimony that letters of inquiry were directed to various companies and that Dun & Bradstreet was consulted. There was no testimony, however, of any direct visits to the manufacturers referred to. In that case, it appeared that some of the necessary information could have been obtained by subpoenaing witnesses into court. The court held the record made by the plaintiff to be insufficient to meet the burden of proof covering the profit and general expenses phases of the case. "It has

not been established by the evidence," said the court, "that the importer herein was reasonably diligent in its efforts to secure the facts concerning the profit and expenses of its competitor. * * * It is not a sufficient answer to say that such attempts would have been futile. Plaintiff, on this record, not only has failed to overcome the presumption of correctness attaching to the appraiser's finding of value, but, further, has failed to establish the correctness of the claimed values." The same is true, in my opinion, with respect to the record in the case at bar. In reappraisement appeals, the importer must carry a heavy burden of proof. There is in the first instance a presumption that the official appraisement is correct. The appellant must establish that the appraised value is erroneous to overcome such presumption, and must then affirmatively show the correct dutiable value of the merchandise. The plaintiff in this case has not overcome the burden imposed upon it under the statute.

On the record as made in this case, I find as facts:

1. That the merchandise covered by this appeal consists of certain motorcycles, Model YD–2, 250 cc and Model YDS1, 250 cc, exported from Japan on or about May 21, 1960. The machines included in Model YD–2, 250 cc were appraised at $247.47 and the other models at $275.63 each.

2. That, during the period in question, such or similar merchandise was not freely sold or, in the absence of sales, offered for sale in the usual wholesale quantities and in the ordinary course of trade, in the principal markets of Japan for exportation to the United States.

3. That, on or about the date of exportation, such or similar merchandise was not freely sold or, in the absence of sales, offered for sale in the principal market of the United States for domestic consumption, packed ready for delivery, in the usual wholesale quantities and in the ordinary course of trade.

4. That the cost of materials and of fabrication or other processing of any kind employed in producing such or similar merchandise, at a time preceding the date of exportation of the merchandise undergoing appraisement, which would ordinarily permit the production of that particular merchandise in the ordinary course of business, plus an amount for general expenses and profit equal to that usually reflected in sales of merchandise of the same class or kind as the merchandise undergoing appraisement which are made by producers in the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for shipment to the United States, plus the cost of containers and covering and other expenses incidental to placing the merchandise undergoing appraisement in condition, packed ready for shipment to the United States, represents the proper dutiable value of the merchandise under consideration.

5. That the presumption of correctness attaching to the appraiser's finding of value in this case has not been overcome by any probative evidence adduced on the part of the plaintiff, nor has the plaintiff established any other value or values as the correct ones for the merchandise in question.

I find, as matters of law:

1. That constructed value, as that value is defined in section 402(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis for the determination of the value of the merchandise here involved, and

2. That such constructed value was the value as found by the appraiser in each case.

Judgment will be entered accordingly.