(R.D. 11316)

MEADOWS WYE & CO., INC. *v.* UNITED STATES

Entry Nos. 849327 ; 891107 ; 764356.

(Decided June 1, 1967)

*Nixon, Mudge, Rose, Guthrie & Alexander* and *Sharretts, Paley & Carter* (*Eugene F. Blauvelt* of counsel) for the plaintiff.

*Carl Eardley,* Acting Assistant Attorney General (*Bernard J. Babb,* trial attorney), for the defendant.

BECKWORTH, Judge: The merchandise involved in these appeals for reappraisement, consolidated for trial, consists of certain cosmetic preparations, imported from France and entered at the port of New York in 1961 and 1962. It was appraised on the basis of constructed value, as that value is defined in section 402(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956. The parties are in agreement that said merchandise is not identified on the

final list published by the Secretary of the Treasury, 93 Treas. Dec. 14, T.D. 54521.

In R63/10279, the appraised value found for ecusson soap was 9 new French francs, less 20 percent, plus packing. In R63/15570, the soap involved was appraised at the unit invoice values in the column marked "X" (9 new French francs), less 20 percent, plus packing, and in R63/9409, the appraised values found were the unit invoice values in new French francs, less 25 percent, plus packing.

The basis of valuation is not in dispute, but plaintiff claims that the correct values are those set forth in the affidavit of Andre Marc Grange (exhibit 1).

In that affidavit, Mr. Grange stated that he is vice president of Jean d'Albret, a French corporation, whose business is the manufacture and sale of perfumes and cosmetic preparations both for home consumption and for export, and that the company has been selling its cosmetics for export to the United States, since 1953, exclusively to the Jean d'Albret Division of Warner-Lambert Corp. The affiant said he was thoroughly familiar with and had consulted the cost records maintained by his company in the regular course of business; that the cost of materials and fabrication set forth in the affidavit were the actual costs incurred in the manufacture of each particular product during the period immediately prior to exportation required to manufacture it, and that the amounts shown under the heading "Cost of Containers and Packing" were the actual cost of bottles, jars, and individual sales packages, plus the proportionate share of outside packing cases, plus all other expenses incident to placing the merchandise in condition packed ready for shipment to the United States. The affidavit also states:

* * * The amounts shown under the heading "General Expenses and Profit" represent 56% percentage of the cost of materials and direct labor applied to the material, this percentage having been calculated under my direction on all of the sales of cosmetic materials of the same general class or kind that have been exported to the United States during all of the years my company has been exporting such merchandise to the United States. The aforesaid percentage addition for general expense and profit has not varied during the years that my company has been exporting to the United States. * * *

There follows a list of various articles of merchandise together with the "Cost of Materials & Fabrication," "General Overhead Expense & Profit," "Cost of Containers & Packing," and "Total." The affidavit also states that the price at which each product was sold for export to the United States does not always equal the total of the cost of materials, labor, overhead, and profit, because there are slight variations in profit on the many different items sold for export to the United States. (A subsequent affidavit, exhibit 2, states that the amounts given are in the United States currency.)

The affiant also stated that during 1961 and 1962 there were three companies in France manufacturing for exportation to the United States cosmetics of the same general class and kind as those exported by his company, namely, Lancome, Stendhal, and Payot. The affidavit continues:

I have no personal knowledge of the amount of profit and general overhead expenses which were reflected in the sales of products manufactured for export to the United States by any of the above-named companies. Such information is a closely guarded business secret.

I have no reason to believe that the amount of general expenses and profit reflected in sales of Jean d'Albret products to the United States is different from the amount reflected in the sales made by other companies exporting similar products to the United States during the same period.

Mr. Omar R. Adame, vice president of the Jean d'Albret Division of Warner-Lambert Pharmaceutical Co., was called as a witness at the trial. He testified that there was no direct or indirect connection between that division and the French concern, Jean d'Albret; that Warner-Lambert wished to market a line of prestige perfumes and cosmetics and had worked out a contractual obligation with the French company to handle the distribution of its products; that there were no common employees; and that neither company had control over the other. The name Jean d'Albret Division was used because perfume is a prestige product and use of the name helps in marketing.

Mr. Adame testified that he visited Mr. Grange about 2 weeks before the trial to obtain information for this case. At that time, he requested Mr. Grange to attempt to find out the overhead and profit markup of the three French companies, Lancome, Stendhal, and Payot, but Mr. Grange refused to communicate with them. The witness then testified that he did not know of any method by which he could have approached the three companies except through Jean d'Albret.

"Constructed value," as defined by section 402(d) of the Tariff Act of 1930, as amended, is composed of the sum of (1) the costs of materials and fabrication, (2) an amount for general expenses and profit, and (3) the cost of all containers and coverings incidental to placing the merchandise in condition for shipment to the United States. The principal dispute between the parties here is whether plaintiff has established the second element in accordance with the statute.

Section 402(d) defines the second component as follows:

(2) an amount for general expenses and profit equal to that usually reflected in sales of merchandise of the same general class or kind as the merchandise undergoing appraisement which are made by producers in the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for shipment to the United States; * * *.

Under predecessor sections, it has been held that the profit to be added is not to be determined only from that added by the manufacturer of the imported merchandise but that the profit ordinarily added by producers of merchandise of the same general character must be considered. *United States* v. *Henry Maier*, 21 CCPA 41, T.D. 46378; *United States* v. *Jovita Perez*, 36 CCPA 114, C.A.D. 407; *United States* v. *Berben Corporation*, 49 Cust. Ct. 497, A.R.D. 147. Under section 402(d) (2), *supra*, both general expenses and profit must be such as to equal that usually reflected in sales of merchandise of the same general class or kind not only by the manufacturer of the imported merchandise but by other producers. *Bell Importing Co.* v. *United States*, 57 Cust. Ct. 552, R.D. 11196; *The American Greiner Electronic, Inc.* v. *United States*, 57 Cust. Ct. 616, R.D. 11221, rehearing granted December 6, 1966. The only exceptions which have been allowed are where merchandise of the same class or kind is not produced by others, or where diligent efforts have been made to ascertain the profit of other manufacturers without success. In such cases, the profit actually added may be used. *United States* v. *Jovita Perez*, *supra; Rex Cutlery Corp.* v. *United States*, 55 Cust. Ct. 778, A.R.D. 199, and cases cited.

In *United States* v. *Berben Corporation*, *supra*, plaintiff presented an affidavit which stated that, on the basis of affiant's knowledge of the cost of materials, labor, overhead, and packing, and of other expenses that go into the production of the same class and kind of merchandise and on the basis of his knowledge of the selling prices of the other manufacturers, he was able to state that their profit was not greater than the profit which his company added. The court held this affidavit insufficient, stating:

We are, of course, mindful of the fact that the language of the statute oftentimes places a seemingly insuperable burden upon the importer to marshal evidence from sources whose very existence or whereabouts are unknown to him and, indeed, often unavailable to him. To bridge this abyss, the courts have on occasion permitted evidence of profits added by the manufacturer to the merchandise in question, coupled with proof of unrewarded diligence on the part of the importer to ascertain the profit added by competing manufacturers to merchandise such as or similar to the imported merchandise, or of the same general character as such merchandise, if such be in existence, to suffice in discharging the requirements of the statute. See *United States* v. *Arrow Upholstery Co., Inc.*, 24 Cust. Ct. 539, Reap. Dec. 7793; *United States* v. *Jovita Perez*, 36 C.C.P.A. (Customs) 114, C.A.D. 407; *Raylite Trading Co.* v. *United States*, 38 Cust. Ct. 753, A.R.D. 76. In such manner, the court gains the necessary reassurance that the profit added to the particular merchandise in question is not conveniently below that of the market for such goods in circumvention of our tariff regulations pertaining to dutiable value. In our opinion, no such case was presented to the trial court on the instant record to warrant

the application of the principle laid down in the cited cases, where, as here, the record is barren of any evidence of *diligent effort* on appellee's part to ascertain the existence or nonexistence, as the case may be, of records and other data of other Italian pistol manufacturers pertaining to the profit usually added by them to the manufacture of pistols of the same general character as those here involved, and to produce such records and data as may be found to be in existence and to be available. * * * [Italics quoted.]

The case was remanded to the trial court and further evidence was presented showing that registered letters had been sent to all other pistol manufacturers in Italy, and that replies had been received stating that the producer was unwilling to disclose its profits or that it did not manufacture pistols during the period of exportation. The court held that this evidence was adequate proof that diligent effort was made to ascertain such profit but competitor manufacturers declined to reveal the information. *Berben Corporation* v. *United States*, 51 Cust. Ct. 314, Reap. Dec. 10552.

In *A. N. Deringer, Inc. et al.* v. *United States*, 53 CCPA 135, C.A.D. 890, the court held that the importer had failed to show that the usual allowance for profit of other manufacturers was not reasonably available. There was a statement by one witness that he was not able to obtain the information because it was confidential and by testimony by another that he had written letters requesting information and had received replies giving none. The court noted that the inquiry stated that the information was desired "for statistical purposes and a review of our own operation" and made no mention of tariff purposes. A customs representative was more successful, getting information as to gross profits and net profits on sales of steam traps from one, gross profits in the foundry industry from another, and percentage profits on steam traps from a third. The court of appeals agreed with the appellate division's conclusions that, while the importer made an ineffectual effort to obtain information from its competitors, the proof showed that profit made by other Canadian manufacturers was obtainable.

In *United States* v. *Arrow Upholstery Co., Inc.*, 24 Cust. Ct. 539, Reap. Dec. 7793, the court held that the requirements of section 402 (f) (4) of the Tariff Act of 1930, were mandatory and that the facts called for must be supplied or their nonexistence established by competent proof. It stated further:

* * * This mandate of the statute is not to be dispensed with by the court taking judicial notice of the fact—if it be a fact of which the court may properly take judicial notice—that evidence as to the profit ordinarily added by other manufacturers would not be available because of its assumed confidential nature.

It is clear from these authorities that, where there are other producers of merchandise of the same class or kind, there must be a showing of

some effort to obtain information as to their general expenses and profits. In other words, it cannot be assumed that such information is unavailable. Has a diligent effort to obtain the necessary information been shown here?

Statements that the manufacturer had no way to know what the general expenses and profit usually added by other manufacturers were, as they were business secrets, without any showing of a diligent effort to obtain information have been held insufficient, as have statements regarding the cost accounting practices of competitor manufacturers which were founded upon the opinion of the affiant. *Yamaha International Industries U.S.A. (Elder)* v. *United States*, 53 Cust. Ct. 339, Reap. Dec. 10780; *Rex Cutlery Corp.* v. *United States, supra; Ercona Camera Corp. et al.* v. *United States*, 56 Cust. Ct. 811, A.R.D. 207.

In *The American Greiner Electronic, Inc.* v. *United States, supra*, Mr. Greiner testified that there was one other company in Switzerland, Reno, S.A., which manufactured watch timers. A letter had been written to it and a reply received stating that the company was a commercial sales distributor; that it did not know the calculation of its manufacturer, and that it was not customary to deliver such information to a competitor. There was no attempt to explain or reconcile the allegation that Reno was the only other Swiss manufacturer with the statement of Reno that it was a sales distributor. The court held that plaintiff's communication was inadequate to show the degree of diligence required, stating:

Without evidentiary facts to show that plaintiff made diligent but unrewarded efforts to ascertain the required information, there is nothing in the record to warrant a finding of adequate diligence. Lack of proof of the adequacy of such diligence on the part of plaintiff leaves undisturbed the presumptively correct value set by the appraiser.

*Berben Corporation* v. *United States* on remand, *supra*, and the recent case of *United States* v. *Oscar E. Eggen (American Express Co.) et al.*, 57 Cust. Ct. 736, A.R.D. 212 (appeal pending), indicate ways in which due diligence may be established. In the *Eggen* case, the court stated:

* * * Cases on the subject of "diligent effort" demonstrate that the court is closely interested in the detailed efforts comprising any alleged diligence. The court in each case must decide whether such effort was adequate or merely perfunctory. It is clear also from *United States* v. *Berben Corporation*, 49 Cust. Ct. 497, A.R.D. 147, that the court appreciates the difficulty under some circumstances of obtaining such proof from competitors. Accordingly, futility of effort will not defeat a litigant if sufficient evidentiary proof of diligence satisfies the court.

In that case, the witness stated that he contacted personally some five ball bearings manufacturers, including two other firms that manufactured inch-size bearings, without success. No usable information was

obtained, but the trial court, and on appeal the appellate division, were satisfied of due diligence.

In the instant case, the importer requested its supplier to make an inquiry which it refused to do. There the importer has rested its case without making any inquiries itself. Without facts, the court cannot determine that such an effort would have been futile.

On the record presented, plaintiff has not sustained its burden of establishing either the general expenses and profit usually added by other producers of merchandise of the same class or kind or that diligent but unsuccessful efforts were made to ascertain the same. Thus plaintiff has not proven all the elements of its claimed value. Therefore, it was not incumbent on the Government to prove that the appraised value was correct. *Kobe Import Co.* v. *United States*, 42 CCPA 194, C.A.D. 593.

Defendant claims as an additional ground of inadequacy in plaintiff's proof that the claimed amounts of general expenses and profit were not shown separately. For the reasons stated in *Fashion Ribbon Co., Inc.* v. *United States*, 58 Cust. Ct.—, R.D. 11314 (R63/14119), this claim is not sustained.

I find as matters of fact:

1. That the merchandise involved herein consists of certain cosmetic preparations, imported from France and entered at the port of New York in 1961 and 1962.

2. That said merchandise was appraised on the basis of constructed value, as that value is defined in section 402(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956. That said merchandise does not appear on the final list published by the Secretary of the Treasury, 93 Treas. Dec. 14, T.D. 54521.

3. That the basis of valuation is not in dispute.

4. That plaintiff has failed to establish an amount for general expenses and profit equal to that usually reflected in sales of merchandise of the same general class or kind as the merchandise involved herein made by producers in the country of exportation in the usual wholesale quantities and in the ordinary course of trade for shipment to the United States.

5. That plaintiff has failed to establish that it made diligent efforts to ascertain the general expenses and profit usually reflected in sales of merchandise of the same general class or kind as the merchandise involved herein made by other producers in the country of exportation in the usual wholesale quantities and in the ordinary course of trade, for shipment to the United States.

I conclude as matters of law:

1. That constructed value, as that value is defined in section 402(d) of the Tariff Act of 1930, as amended by the Customs Simplification

Act of 1956, is the proper basis for determining the value of the involved merchandise.

2. That such value is represented by the appraised values.

Judgment will be entered accordingly.