(R.D. 11669)

DOLLIFF & COMPANY, INC. v. UNITED STATES

Entry No. 5299.

(Decided May 29, 1969)

*Walter E. Doherty, Jr.*, for the plaintiff.

*William D. Ruckelshaus*, Assistant Attorney General (*Bernard J. Babb* and *Owen J. Rader*, trial attorneys), for the defendant.

DONLON, Judge: Plaintiff's appeal to reappraisement challenges the valuation of certain business machines, cabinets and trays, exported from England in July, 1961. Plaintiff does not question appraisement

of merchandise which was marked by the agent "NETT". Litigation is as to that part of the entry merchandise which was appraised in English currency at unit values that were indicated by the agent in red ink "less 40%, plus pkg & cases."

The Rule 15 statements on file show that the litigated merchandise was valued on the basis of constructed value, and that plaintiff claims there is an export value. The export values claimed are the red ink English currency unit values less 50%, plus packing and cases.

It is conceded that the merchandise at bar is not included in the so-called Final List of the Secretary of the Treasury (T.D. 54521). Hence, value is to be determined under section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

It further appears that the merchandise at bar was manufactured in England and sold there by Adrema Limited to Farrington Business Machine Corporation, the importer for which plaintiff acted in this transaction as customs broker; that both Adrema and the importer are wholly owned subsidiaries of a corporation, Farrington Manufacturing Co. of New York. Farrington, the importer, therefore is a "selected purchaser" of the merchandise at bar, within the purview of section 402(f)(1)(B) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956. To prove its claim that there was an export value for this merchandise, plaintiff's proofs must show that there existed the special statutory conditions applicable to selected purchasers, as well as the general statutory conditions of 402(b). The sections, in relevant part, are as follows:

> Sec. 402(b): Export value. For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.
>
> &ast; &ast; &ast; &ast; &ast; &ast; &ast;
>
> Sec. 402(f): Definitions. For the purposes of this section—
> > (1) The term "freely sold or, in the absence of sales, offered for sale" means sold or, in the absence of sales, offered—
> >
> > &ast; &ast; &ast; &ast; &ast; &ast; &ast;
> >
> > > (B) in the ordinary course of trade to one or more selected purchasers at wholesale at a price which fairly reflects the market value of the merchandise,
> >
> > without restrictions as to the disposition or use of the merchandise by the purchaser, except restrictions as to such disposition or use which (i) are imposed or required by law, (ii)

limit the price at which or the territory in which the merchandise may be resold, or (iii) do not substantially affect the value of the merchandise to usual purchasers at wholesale.

\*      \*      \*      \*      \*      \*      \*

The official papers are in evidence. Plaintiff introduced into evidence two affidavits (plaintiff exhibits 1, 2) verified by Mr. S.C. Payton, described as joint managing director of Adrema Limited since 1963 and theretofore for four years the comptroller of Adrema. Defendant introduced into evidence a voluminous report (some 200 pages, with annexed data) made under date of February 7, 1966, to the Commissioner of Customs by James O. Holmes, described as Senior Customs Representative in London. (Defendant collective exhibit A.)

The nub of the controversy is whether the discount of 50% from unit price, allowed by Adrema on sales to Farrington, resulted in prices for the merchandise at bar that fairly reflect its market value. There were, it appears, no such restrictions on disposition or use as section 402 (f) (1) proscribes. Defendant's exhibit A expressly states that there were no such restrictions.

The official papers show that exportation from England was on July 24, 1961, and that entry at Boston was on August 24, 1961. It is price at the time of exportation which constitutes export value, provided it meets the other statutory conditions. That time of exportation is July 24, 1961. A considerable part of defendant's extensive documentary evidence is irrelevant to this litigation, because it speaks as of times that are considerably later than July 24, 1961. The Adrema price list introduced by defendant which bears the earliest date, in 1963, incorporated in defendant's collective exhibit A, contains a notation that the export prices there quoted were for sales to France from January 10, 1963, and to "U.S.A. from 7/2/64." This can hardly be deemed proof as to prices on or about July 24, 1961. Defendant's brief concedes as much.

As to Mr. Payton's affidavits, the first (exhibit 1) has to do with Adrema's practices as to sales in the domestic English market and for export to the United States and other countries. It is directed to the customs entries enumerated in schedule A, attached to exhibit 1. One such entry is the entry of this appeal. Conceding that discounts were not generally granted on sales in the English home market, Mr. Payton states that the reason is that in England "we sell directly to the users of the equipment and have to bear the cost of our own sales staff, branch offices and servicing and installation departments, all of which are not necessary in connection with export sales. Also, there is a purchase tax applicable to domestic sales which is not assessed on exports."

As to sales made in England for export to foreign countries, other than the United States, Mr. Payton said, in exhibit 1:

> We also give discounts on sales to other countries than the United States. Though the discount to purchasers in some countries is 40%, the discount is generally higher depending on the size of the country, the quantities purchased, whether the purchaser has to compete with any locally manufactured products which are similar to our machines and whether competitive equipment can be imported into the country at lower prices than ours could be if the larger discount was not given. Those purchasers receiving the 40% discount are generally located in small countries, order small quantities and lack competition. Other countries, such as Belgium, France, Switzerland, Sweden, Finland, Austria, Germany and Canada are given discounts of between 50% and 60%. Many more of our machines are sold to purchasers in those countries where a discount of over 50% is given than in those countries where the 40% discount is given. In Sweden and in France particularly, we have had to give discounts of 60% and 55% respectively during this period, in order that the purchasers be able to compete with local manufacturers. In Canada, because of the fact that the market there has been practically a monopoly prior to our entry into it, we have given a discount of 50% and this is so even under Empire Preferential Tariff Treatment existing there. We also during the period in question gave a 50% discount to purchasers in Austria, Belgium, Finland, Germany, Holland, Norway, South Africa and Switzerland because of competitive conditions in those countries.

The competitive market conditions which Mr. Payton has detailed as affecting prices on sales in the English market for export to various countries, support plaintiff's contention that a discount of 50%, rather than 40%, was the usual practice at the time of exportation on sales to many countries. Indeed, it appears that while a discount of only 40% was given to purchasers in small countries, where quantities purchased are small and there is lack of competition, on sales for export to Belgium, France, Switzerland, Sweden, Finland, Austria, German, and Canada, the discounts given were even greater than the discount to Farrington, namely, between 50% and 60%.

Plaintiff has overcome its first hurdle of proof. It has shown that the merchandise at bar was "freely sold" to Farrington in the ordinary course of trade at prices that fairly reflect the market value, within the guidelines laid down in *United States* v. *Acme Steel Company*, 51 CCPA 81, C.A.D. 841 (1964); *Union Carbide Corporation* v. *United States*, 58 Cust. Ct. 821, A.R.D. 222 (1967); and *Myerson Tooth Corporation* v. *United States*, 61 Cust. Ct. 540, R.D. 11597 (1968).

Defendant is not on sound ground in arguing that "ordinary course of trade" should be construed as embracing practices pertaining to

*all* sales. "Ordinary" connotes what is usual. Its concept expressly recognizes that, as a variant, there may be practices that are unusual or extraordinary.

However, the record is barren of any proofs showing what the usual wholesale quantity is, or whether the prices shown are for merchandise in the usual wholesale quantity. This is an essential element of plaintiff's case when seeking to establish export value.

Defendant argues that the court may not consider proofs of record as to constructed value. As is too well known to require citation, the duty of the court in appeals to reappraisement is to find value on all the evidence before it. It is not the best practice for plaintiffs to fail to disclose, in their Rule 15 statements, the precise ground or basis for the litigated claim; but when the statement filed is inadequate, as when no statement is filed, the trial judge has wide latitude, provided the judicial discretion is exercised before judgment.

In this case defendant did not object to the introduction of proofs as to constructed value. What defendant objected to in Mr. Payton's second affidavit (exhibit 2) was the last three lines, on the sole ground that the statements made in those lines are conclusionary. There was no other objection to exhibit 2.

Mr. Payton's statements as to costs, when not conclusionary, are less than clear. He seems to say that there were no administrative costs whatsoever that could be attributed to manufacture of the merchandise at bar, that the only indirect overhead items charged as costs of constructing such merchandise are rent and such other items as are incurred irrespective of sales volume, but not including either administrative or selling expenses. If, *arguendo*, other proofs of record were to be accepted as explaining why selling expenses are assignable only to domestic sales, there certainly is no such explanation for excluding the cost of administrative overhead. The statutory elements of constructed value include an amount for "general expenses and profit".

Not only are plaintiff's proofs deficient as to its own general expenses and profit; they also fail convincingly to relate the cost element of general expenses and profit to producers in England. As defendant points out, some of the machines at bar are hand machines which, so plaintiff concedes, are produced by at least one other English manufacturer.

See *Meadows Wye & Co., Inc.* v. *United States*, 58 Cust. Ct. 746, R.D. 11316 (1967); *United States* v. *Jovita Perez*, 36 CCPA 114, C.A.D. 407 (1949); *Rex Cutlery Corp.* v. *United States*, 55 Cust. Ct. 778, A.R.D. 199 (1965).

Plaintiff's proofs do not show the claimed export values. Nor do the proofs overcome the presumption that the appraised constructed costs are correct.

I find as facts the following:

1. The merchandise at bar consists of business machines, cabinets and trays, exported from England on July 24, 1961.

2. Said merchandise was appraised on the basis of constructed value, as defined in section 402(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

3. The merchandise at bar does not appear on the Final List (T.D 54521) promulgated by the Secretary of the Treasury.

4. The ultimate consignee, Farrington Business Machine Corporation, and the exporter, Adrema Limited, both are wholly owned subsidiaries of the Farrington Manufacturing Co. of New York, a corporation.

5. The merchandise at bar was sold for exportation to the United States exclusively to the importer, Farrington, at a discount of 50% from unit price.

6. There is no evidence of usual wholesale quantity, although plaintiff does establish that the merchandise was "freely sold" to Farrington in the ordinary course of trade at a price that fairly reflects the market value.

7. Plaintiff has failed to establish an amount for general expenses and profit equal to that usually added by other producers of merchandise of the same general class or kind.

I make the following findings of law:

1. The transaction at bar is a sale to a selected purchaser within the scope of section 402(f)(1)(B) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

2. Plaintiff's proofs fail to overcome the presumption that constructed value, as defined in section 402(d), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis for valuation of the merchandise at bar.

3. The record does not establish constructed values for the merchandise at bar other than values found by the appraiser.

4. The constructed values of the merchandise at bar are the respective appraised values.

Judgment will be entered accordingly.