**MEADOWS WYE & CO., Inc.**

v.

**UNITED STATES.**

**R.D. 11706; Reappraisement R63/10193.**

United States Customs Court.
May 28, 1970.

Paul D. Miller, Nixon, Mudge, Rose, Guthrie & Alexander, New York City,

Sharretts, Paley, Carter & Blauvelt, New York City (Eugene F. Blauvelt, and Charles P. Deem, New York City, of counsel) co-counsel, for plaintiff.

William D. Ruckelshaus, Asst. Atty. Gen. (Bernard J. Babb, and John A. Winters, New York City, trial attorneys), for defendant.

WATSON, Judge:

This appeal for reappraisement involves importations of certain cosmetic preparations, exported from France on or about November 2, 1961 and entered by the plaintiff (customs broker) at the port of New York. The ultimate consignee of the merchandise was Jean d'Albret Division of Warner-Lambert Pharmaceutical Corporation, 681 Fifth Avenue, New York City.

The involved merchandise is not enumerated in the "Final List", T.D. 54521. It was appraised upon the basis of "Constructed Value", as defined in section 402(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, at the unit invoice value in French francs, less 25 percent, plus packing. Plaintiff does not dispute that "Constructed Value" is the proper basis of dutiable value, but contends that the unit values found by the appraiser do not represent the constructed values of the involved items; and that the correct constructed value of each item of merchandise is that set forth in the affidavit of André Marc Grangé, vice-president of Jean d'Albret, manufacturer and seller of the imported materials, admitted in evidence as exhibit 1.

Section 402(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, provides:

(d) Constructed Value.—For the purposes of this section, the constructed value of imported merchandise shall be the sum of—

(1) the cost of materials (exclusive of any internal tax applicable

in the country of exportation directly to such materials or their disposition, but remitted or refunded upon the exportation of the article in the production of which such materials are used) and of fabrication or other processing of any kind employed in·producing such or similar merchandise, at a time preceding the date of exportation of the merchandise undergoing appraisement which would ordinarily permit the production of that particular merchandise in the ordinary course of business;

(2) *an amount for general expenses and profit equal to that usually reflected in sales of merchandise of the same general class or kind as the merchandise undergoing appraisement which are made by producers in the country of exportation,* in the usual wholesale quantities and in the ordinary course of trade, for shipment to the United States; and

(3) the cost of all containers and coverings of whatever nature, and all other expenses incidental to placing the merchandise undergoing appraisement in condition, packed ready for shipment to the United States. [Emphasis added.]

The record consists of two exhibits, the official papers, and the testimony of one witness for the plaintiff.

The same plaintiff was before the court in an appeal for reappraisement of identical merchandise in Meadows Wye & Co., Inc. v. United States, 58 Cust.Ct. 746, R.D. 11316 (1967). Judge Beckworth there held that the plaintiff had not met its burden to prove the claimed values, in that plaintiff had not shown the "general expenses" and "profit" usually added by other producers in France of the same class or kind of merchandise, as required by section 402(d) (2) of the Tariff Act of 1930, as amended.

In the *Meadows Wye* case (R.D. 11316), *supra,* the court, page 751, stated:

Statements that the manufacturer had no way to know what the general expenses and profit usually added by other manufacturers were, as they were business secrets, without any showing of a diligent effort to obtain information have been held insufficient, as have statements regarding the cost accounting practices of competitor manufacturers which were founded upon the opinion of the affiant. [Cases cited.]

It was indicated by the court therein that plaintiff could sustain its burden of proof if it established either the general expenses and profit usually added by other producers of merchandise or that diligent but unsuccessful efforts were made to ascertain the same. It appears that in the *Meadows* case, *supra,* there were no such efforts. In the case at bar, plaintiff has introduced the affidavit (exhibit 1) of Mr. Grangé to establish such "diligent but unsuccessful efforts".

The affiant in exhibit 1 stated in part as follows:

\* \* \* The products involved are all cosmetic preparations typical of those his company has sold to the Jean D'Albret Division of Warner-Lambert in the past as well as at the present time; and that he was thoroughly familiar with the cost records maintained by his company and had consulted such records which are maintained in the regular course of business.

Mr. Grangé further stated that the cost of materials and fabrication, "set forth below in U. S. currency" were the actual costs incurred in the manufacture of each particular product during the period immediately prior to the exportation of each shipment, required to manufacture same. The affidavit sets forth (exhibit 1, page 2) amounts covering "Cost of Materials & Fabrication", "General Overhead Expense & Profit", and "Cost of Containers & Packing" claimed as the proper values of the imported merchandise. The total

claimed values of the imported merchandise are itemized, but general expenses and profit are not shown separately. The affiant further stated (exhibit 1, page 2):

> * * * The amounts shown under the heading "General Expenses and Profit" represent 56% percentage of the cost of materials and direct labor applied to the material, this percentage having been calculated under my direction on all of the sales of cosmetic materials of the same general class or kind that have been exported to the United States during all of the years that my company has been exporting such merchandise to the United States. The aforesaid percentage addition for general expense and profit has not varied during the years that my company has been exporting to the United States. * * *.

At page 3 of exhibit 1, Mr. Grangé stated:

> The price at which each of the above products was sold for export to the United States does not always equal the total of the cost of material, labor, overhead, and profit, because of the fact that there are slight variations in profit on the many different items of merchandise of the same class or kind which have been sold for export to the United States.

Mr. Grangé further stated that during the year 1961 there were three companies in France manufacturing, for exportation to the United States, cosmetics of the same general class or kind as those exported by his company during those years. The three companies were identified as Lancome, Stendhal, and Payot. The affiant stated that he had no knowledge of the general expenses and profit of those companies, indicating that "Such information is closely guarded business secret." It appears that Mr. Grangé, in October 1967, addressed communications to the other companies requesting they supply him with the amounts for general expenses and profit in connection with the sale of their cosmetic products. Separate statistics on general expenses and profit were not requested by Mr. Grangé. Only one reply was received, which was from Lancome. Exhibit 1–A is an English translation of a letter in French from Lancome relative to the request by Mr. Grangé to supply the latter the amount for general overhead and profit "included in the price you charge for your cosmetic products exported to the United States." The reply from Lancome states, in part, as follows:

> * * * this data refers to the very structure of our company and on advice of counsel it appears impossible for us to make it available to you.
>
> We regret that we are obliged by these circumstances to decline your request.

Mr. Omar R. Adame, general manager of the Jean d'Albret Division of Warner-Lambert Pharmaceutical Corporation testified that the aforesaid company is engaged in the importation of French perfumes and cosmetics for distribution throughout the United States. It was indicated that there is no direct connection between the exporter and the Jean d'Albret Division of Warner-Lambert other than that of seller and buyer respectively. The witness stated that he was familiar with the items of merchandise covered by the involved importation. The record further discloses that Mr. Adame had extensive experience in the particular industry with which we are here concerned.

Mr. Adame further testified that after the decision in the *Meadows Wye* case (R.D. 11316), *supra,* he requested Mr. Marc Grangé to contact other French firms doing business in the United States with the view of obtaining information concerning the cost of production of their merchandise to the United States. Subsequently, as heretofore indicated, Mr. Grangé did write letters to the other French firms. Mr. Adame stated that it

was his duty and responsibility to ascertain what companies were in competition with his concern in the sales field and to know how his company's products measured up to competitive products. He also stated that during 1961 the only French manufacturers exporting merchandise of the same class or kind as that here involved, were "Lancome", "Stendhal", and "Payot". In October and December 1967 and in April 1968, Mr. Adame visited Mr. Grangé in France and made inquiries from the latter as to whether or not he had received any information from the aforesaid companies relative to the matter of their general expenses and profit. Mr. Adame testified that he was unable to obtain from Mr. Grangé or from any other source any information as to the general expenses and profit of the competing firms.

In this case, plaintiff has the burden of establishing not only that the finding of value by the appraiser, which is presumptively correct, was erroneous, but of establishing some other value as the correct one. Kobe Import Co. v. United States, 42 CCPA 194, C.A.D. 593 (1955). Under section 402(d) (2), supra, both general expenses and profit must be such as to equal that usually reflected in sales of merchandise of the same general class or kind not only by the manufacturer of the imported merchandise but by other producers. Meadows Wye & Co., Inc., supra (R.D. 11316); Bell Importing Co. v. United States, 57 Cust.Ct. 552, R.D. 11196 (1966). The only exceptions which have been allowed are where merchandise of the same class or kind is not produced by others, or where diligent efforts have been made to ascertain the amounts of the involved items without success. Further, it cannot be assumed that such information is unavailable, Meadows Wye & Co., Inc., supra.

Essentially, the question here for determination is whether or not the plaintiff has proven diligent but unsuccessful efforts to ascertain the "general expenses" and "profits" of other producers of similar merchandise in France so as to establish its claimed amounts for the items in question. I am persuaded that under the circumstances of this case, plaintiff by its indicated endeavors to ascertain the amounts for general expenses and profit of other producers has discharged its burden of proof in this respect. The defendant in its brief (page 6) asserts that there is nothing in the record to substantiate plaintiff's assertion (plaintiff's brief, Page 8) that Mr. Adame requested Mr. Grangé to obtain from other French firms information concerning the cost of production of their products exported to the United States. However, it definitely appears in the record, page 7, that Mr. Adame testified that after the decision in the prior case, he did "call upon Mr. Grangé for the purpose of endeavoring to contact several other firms, French firms that do business in the United States, to ask them if we could obtain from them information regarding constructed value, and cost of production of those products, or similar products, to the United States." Further, the defendant in its brief (page 6) asserts that "in Mr. Grangé's affidavit, he does not attest to the fact that there were only three French companies exporting similar merchandise to the United States." As a matter of fact, as heretofore noted, Mr. Grangé in his affidavit (exhibit 1, page 3), states that "During the year 1961, to my knowledge, there were three companies in France manufacturing, for exportation to the United States, cosmetics of the same general class or kind as those exported by my company during those years."

It further appears in the record that Mr. Grangé in October 1967 communicated with the other three producers of similar merchandise requesting "if you could be kind enough to tell us what amount (expressed as a percentage of the ex-factory price) for general overhead and profit is included in the price you charge for your cosmetic products ex-

ported to the United States." (Copies of letters attached to exhibit 1.) The only reply that was received from another producer of similar merchandise denied the importer the requested information.

Defendant in its brief (page 8) further suggests that Mr. Grangé could have obtained the desired data concerning general expenses and profit, if he had addressed his communications directly to the presidents of the other producing companies rather than sending letters addressed to those companies under the salutation "Messieurs". This, of course, is mere speculation.

■ The evidence introduced by the plaintiff stands uncontradicted. The defendant did not introduce any evidence tending to overcome that introduced by the plaintiff. In this connection, the appraisement itself is of no help in determining the amounts properly to be allocated for "general expenses" and "profit", since the appraiser did not report his determination of the specific amounts for cost of materials and fabrication nor the amounts for general expenses and profit included in the total unit values he reported. Inasmuch as the appraiser based his appraisement upon the basis of "Constructed Value", he must have determined that there was no export or United States value for similar merchandise being exported to the United States by the other producers, namely, Lancome, Stendhal or Payot, otherwise, he would have appraised the involved merchandise upon the price of "similar" merchandise sold by those companies. It would, accordingly, appear that the appraiser was also appraising the merchandise exported by Lancome, Stendhal and Payot upon the basis of constructed value. In such case, he would presumably have had knowledge of the amounts for general expenses and profit included in the sales of their similar products. As heretofore noted, the defendant did not introduce any evidence to controvert the evidence offered by the plaintiff to overcome the presumption of correctness attaching to the appraised values. Accordingly, without proof on the defendant's part to offset that offered by the plaintiff, the claimed values as indicated by the amounts shown in exhibit 1, must stand.

■ The defendant also makes the contention that plaintiff's proof was inadequate because the amounts for "general expenses" and "profit" were not shown separately. The same argument was also advanced by the defendant in the predecessor *Meadows Wye* case, *supra*, but was rejected by the court "for the reasons stated in Fashion Ribbon Co., Inc. v. United States, 58 Cust.Ct. 737, R.D. 11314 [1967]." For the same reasons set forth in the *Fashion Ribbon* case, I am of opinion and hold that the contention of the defendant in the above respect is without merit.

Accordingly, for the reasons set forth, I hold that plaintiff has established its claimed values as the proper values for the involved merchandise.

I therefore find as matters of fact:

1. That the merchandise involved in this case consists of certain cosmetic preparations manufactured by Jean d'Albret in France and exported to the United States during 1961.

2. That the merchandise in question is not enumerated on the "Final List", published in T.D. 54521 and was appraised upon the basis of "Constructed Value" as defined in section 402(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

3. That the basis of valuation is not in dispute.

4. That the record in this case establishes that the plaintiff made diligent but unsuccessful efforts to ascertain the amounts which represent the general expenses and profit usually reflected in sales of merchandise of the same general class or kind as the merchandise involved herein made by other producers in the country of exportation in the usual wholesale quantities and in the ordinary course of trade, for shipment to the United States.

5. That the uncontroverted evidence introduced by the plaintiff established all the elements of constructed value for the particular items involved, as follows:

| Item No. & Description | Cost of Materials & Fabrication | General Overhead Expense & Profit | Cost of Containers & Packing | Total |
|---|---|---|---|---|
| 577 Tonique | .095 | .053 | .095 | .243 |
| 578 Tonique | .13 | .073 | .125 | .328 |
| 587 Astringent | .11 | .062 | .095 | .267 |
| 588 Astringent | .155 | .087 | .125 | .367 |
| 597 Lotion Camphree | .125 | .07 | .095 | .29 |
| 598 Lotion Camphree | .18 | .101 | .125 | .406 |
| 699 Suntan Jelly | .12 | .067 | .10 | .287 |
| 720 Elixir GR | .24 | .142 | .135 | .517 |
| 613 Eye Shadow Stick | .14 | .079 | .29 | .509 |
| 576 Mascara refill | .06 | .034 | .085 | .179 |
| 1015 Poudre Deesse | .20 | .112 | .285 | .597 |
| 1022 Compact refill | .10 | .056 | .09 | .246 |

I conclude as matter of law:

1. That constructed value, as that value is defined in section 402(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis for determining the value of the involved merchandise.

2. That the statutory presumption of correctness attaching to the appraised values has been overcome.

3. That the constructed value of each item of merchandise is that set forth under finding of fact number 5.

Judgment will be entered accordingly.